# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 04-4123/04-4128

———————

Raymond Battle,          *
         *
    Plaintiff-Appellee/          *   Appeal from the United States
    Cross-Appellant,          *   District Court for the
         *   Eastern District of Arkansas.
    v.          *
         *
United Parcel Service, Inc.,          *
         *
    Defendant-Appellant/          *
    Cross-Appellee.          *
         *

———————

Submitted: November 17, 2005
Filed: February 21, 2006

———————

Before SMITH, HEANEY, and BENTON, Circuit Judges.

———————

BENTON, Circuit Judge.

Raymond G. Battle sued his employer, United Parcel Service, Inc. (UPS), for disability discrimination and retaliation in violation of the Americans with Disabilities Act (ADA), the Age Discrimination in Employment Act (ADEA), the Family Medical Leave Act (FMLA), and the Arkansas Civil Rights Act (ACRA). *See* 42 U.S.C. §§ 12101-12213; 29 U.S.C. §§ 621-634; 29 U.S.C. §§ 2601-2654; ARK. STAT. ANN. §§ 16-123-101 to -108. Before trial, Battle voluntarily dismissed his ADEA count and

the district court[1] granted UPS summary judgment on the FMLA reinstatement claim. After trial, a jury found that UPS had not engaged in disability discrimination, but had violated the ADA and ACRA by failing to reasonably accommodate Battle's disability. The jury awarded lost wages and compensatory damages, but the district court denied punitive damages under the ADA, as a matter of law. UPS appeals the denial of its post-trial motion for judgment as a matter of law on the failure-to-accommodate verdict. Battle cross-appeals the summary judgment on the FMLA reinstatement claim, and the denial of punitive damages. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

Since 1992, Battle has been a Package Division Manager for UPS in Little Rock, Arkansas. He supervises approximately 600 employees at 11 UPS centers to ensure that they meet monthly performance goals. Battle's main source of information is a daily operations report detailing the performance statistics for each center. Division Managers are required to focus on the worst performers and determine why goals are not met, why problems occurred, and how best to correct them. The Division Manager then reports proposed solutions, as well as other statistics, to the District Manager.

In February 2003, Dwayne Meeks became Battle's District Manager. From the outset, Battle claims that Meeks required him to research and memorize extensive, unpredictable, and useless information from the daily operations report. If he did not answer the questions Meeks asked, Meeks berated him in front of other employees. After Meeks's arrival, Battle became increasingly frustrated and depressed, eventually suffering a nervous breakdown in May. On May 7, he requested FMLA leave for job-related stress, which UPS immediately granted.

___

[1]The Honorable Rodney S. Webb, United States District Judge for the Eastern District of Arkansas.

-2-

Shortly before his FMLA leave expired, Battle wrote a letter on July 28, informing Meeks it was increasingly difficult for him to understand, concentrate on, and perform many tasks that Meeks required just before his FMLA leave. To facilitate his return to work, Battle requested an agenda before each meeting with Meeks, and demanded to be returned to his job "as it existed before Meeks arrived." In the alternative, Battle requested an extended leave of absence. Meeks immediately forwarded this letter to UPS's Human Resources Manager, Daniel Minesinger.

On August 1, Battle met with Meeks and Minesinger. Battle presented his July 28 letter, now signed by his primary physician indicating agreement with Battle's stated limitations and accommodation requests. Battle also presented a return-to-work release from a different physician that did not indicate any limitations or necessary accommodations. After discussing Battle's restrictions and the apparent contradiction between the physicians, Minesinger told Battle that he could either return to work immediately without accommodation, or have his primary physician complete an ADA accommodation form for UPS. Battle responded he could do his job with the accommodations described in the July 28 letter, and agreed to ask his primary physician to complete an ADA accommodation form. Minesinger relayed Battle's request for accommodation to UPS's regional office.

On August 5, the Regional Occupational Health Manager sent Battle an acknowledgment of his request for workplace accommodation and enclosed an ADA accommodation form to complete and return. The Health Manager informed Battle that UPS could not assess his request until it received the completed medical form. Rather than complete the form, on August 22, Battle submitted a report from his treating physician, Dr. Gale. According to it, Battle was substantially impaired in his abilities to think, concentrate, and function at work. The report stated that Battle would be able to return to full-time employment with appropriate psychiatric treatment, medication, and reasonable workplace accommodations.

After UPS again notified Battle that it could not process his request until he submitted an ADA accommodation form to the regional office, on August 27, Battle returned the form along with a second medical report from Dr. Gale. The form stated that Battle was not able to perform all physical and mental functions of his position, but specified that he needed accommodation only as to "unassigned tasks and lack of consistent defined agendas." Dr. Gale specified that Battle could perform all "essential job functions" for his position as defined and provided by UPS.

On September 30, Battle met with Paul Kula, UPS's Workplace Planning Manager, to discuss in detail specific accommodations. Battle told Kula that he could perform all essential functions of his position without accommodation. When Kula asked why he needed accommodation, Battle responded that he could not memorize all the information required by Meeks, and that he needed an agenda before each meeting with Meeks to be adequately prepared. Battle defined these tasks as "marginal." He also said he needed advance notice before Meeks asked about anything not related to the "normal flow of business." While Kula assured Battle he was not rejecting the request for accommodation, he told Battle he needed more information about the proposed agenda and a better definition of "outside the normal flow of business." In response, Battle asked for a job description to better define his requested accommodation. Kula told Battle he could not provide this information, but Battle agreed to give the issue more thought and get back to UPS with his requests.

After the meeting, Dr. Gale wrote UPS on September 30. He again stated that Battle was fully capable of performing all essential functions of his position. Kula answered this letter on October 6 by telling Battle that, while Dr. Gale's latest report was encouraging, the medical information did not clearly state that Battle could adequately perform his job functions without accommodation. Kula again requested more information from Battle about his request for an agenda in order to determine whether this could be a reasonable accommodation.

On October 15, Battle sent UPS a new report from Dr. Gale indicating that Battle's ability to think, concentrate, and memorize was not substantially limited to such a degree that would prevent his return to work in a normal workplace environment. UPS acknowledged receipt of Dr. Gale's new report, stating that it believed Battle no longer needed accommodation. UPS confirmed that Battle's job functions would not change upon his return to work, and suggested that Battle contact UPS for a return-to-work date. Battle returned to work at UPS on October 27, 2003, where he continues to work successfully as a Division Manager under Meeks's supervision.

Shortly before his return to work, Battle sued UPS for disability discrimination and retaliation in violation of the ADA, FMLA, ADEA, and ACRA. The ADA and ACRA claims were tried to a jury. At the close of Battle's evidence, UPS sought judgment as a matter of law, arguing that Battle's evidence was insufficient to prove that he was disabled, that UPS failed to engage in a good-faith interactive process to accommodate his disability, and that his requested accommodation was reasonable. UPS also argued that Battle's claim for punitive damages under the ADA was unsupported by the evidence. The district court granted UPS's punitive-damages motion, but allowed the case to proceed on the issue of UPS's liability under the ADA and ACRA. The jury determined that UPS had not engaged in intentional disability discrimination, but that it had failed to reasonably accommodate Battle's disability. After the verdict, UPS renewed its motion for judgment as a matter of law, reiterating the same arguments raised during trial. The district court denied UPS's motion. Both parties appeal.

## II.

UPS appeals the denial of its post-trial motion for judgment as a matter of law on the failure-to-accommodate claims under the ADA and ACRA. ADA and ACRA claims are reviewed under the same principles. ***Duty v. Norton-Alcoa Proppants***, 293

F.3d 481, 490 (8th Cir. 2002); *Greer v. Emerson Elec. Co.*, 185 F.3d 917, 920-21 (8th Cir. 1999). The denial of a motion for judgment as a matter of law is reviewed de novo, applying the same standards as the district court. *Wash Solutions, Inc. v. PDQ Mfg., Inc.*, 395 F.3d 888, 892 (8th Cir. 2005). Judgment as a matter of law requires "no legally sufficient evidentiary basis" for a reasonable jury to find for the non-moving party. **Fed. R. Civ. P. 50(a)(1)**; *Jet Asphalt & Rock Co. v. Angelo Iafrate Constr., LLC*, 431 F.3d 613, 616 (8th Cir. 2005). In making this determination, this court draws all reasonable inferences in favor of the non-moving party, without making credibility assessments or weighing the evidence. *First Union Nat'l Bank v. Benham*, 423 F.3d 855, 863 (8th Cir. 2005), *quoting* *Phillips v. Collings*, 256 F.3d 843, 837 (8th Cir. 2001).

UPS asserts the same arguments as raised to the district court in seeking to overturn the jury verdict. First, UPS argues that there was no legally sufficient basis for a jury to reasonably conclude that Battle was disabled. Under the ADA, a "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities of [an] individual." **42 U.S.C. § 12102(2)(A)**. Determining whether an individual has a qualifying disability requires an individualized analysis of the claimed impairment, including factors such as the nature and severity, probable duration, and expected long-term impact of the impairment. *See* **29 C.F.R. § 1630.2(j)(2)**; *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 483 (1999); *Heisler v. Metro. Council*, 339 F.3d 622, 627 (8th Cir. 2003).

Battle claims that his depression, anxiety, and obsessive-compulsive disorders are ADA-qualifying disabilities, because these mental impairments substantially limit him in the major life activities of thinking and concentrating. Major life activities under the ADA are basic activities that the average person can perform with little or no difficulty, including "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." **29 C.F.R. § 1630.2(i)**. The "ability to perform cognitive functions on the level of an average person" constitutes

a major life activity. ***Brown v. Lester E. Cox Med. Ctrs.***, 286 F.3d 1040, 1045 (8th Cir. 2002). *See also **Amir v. St. Louis Univ.***, 184 F.3d 1017, 1027 (8th Cir. 1999). Accordingly, thinking and concentrating qualify as "major life activities" under the ADA. *See **Shaver v. Indep. Stave Co.***, 350 F.3d 716, 720-21 (8th Cir. 2003), *citing **Brown***, 286 F.3d at 1044-45. *See also **Head v. Glacier Northwest Inc.***, 413 F.3d 1053, 1061 (9th Cir. 2005); ***Fiscus v. Wal-Mart Stores, Inc.***, 385 F.3d 378, 383 (3d Cir. 2004), *citing **Taylor v. Phoenixville Sch. Dist.***, 184 F.3d 296, 307 (3d Cir. 1999); ***Nawrot v. CPC Int'l***, 277 F.3d 896, 907 (7th Cir. 2002).

UPS's strongest attack on the jury verdict is that Battle's depression, anxiety, and obsessive-compulsive disorders do not "substantially limit" his ability to think or concentrate. A "substantial limitation" is an "inability or significant restriction on the ability to perform a major life activity that the average person in the general population can perform." ***Brown***, 286 F.3d at 1045, *citing* **29 C.F.R. § 1630.2(j)(1)**; *see also **Ristrom v. Asbestos Workers Local 34 Joint Apprentice Comm.***, 370 F.3d 763, 769 (8th Cir. 2004). UPS argues that Battle failed to present sufficient proof that he was "substantially limited" in thinking and concentrating, because he offered no evidence comparing his cognitive abilities to those of average people in the general population. Moreover, UPS contends that Battle's testimony only showed he is "moderately limited" in his ability to think and concentrate, which is insufficient to establish an ADA-qualifying disability. *See **Toyota Motor Mfg., Ky., Inc. v. Williams***, 534 U.S. 184, 196 (2002). *See also **Ristrom***, 370 F.3d at 769 (requiring more than a "conclusory pronouncement" of substantial limitations); ***Weber v. Strippit, Inc.***, 186 F.3d 907, 914 (8th Cir. 1999) (same).

Contrary to UPS's arguments, there is record support for the jury's finding that Battle is disabled under the ADA. At trial, Dr. Gale testified that Battle's depression and anxiety substantially limit his ability to think and concentrate as compared to the average person in the general population. ***Heisler***, 339 F.3d at 629 (requiring some comparison of the plaintiff's abilities to the average person). While UPS argues that

Dr. Gale conducted no studies or surveys to reach this conclusion, Dr. Gale is a medical doctor with 38 years of experience evaluating and diagnosing psychiatric impairments like Battle's. Dr. Gale also explained to the jury that Battle thinks and concentrates at a laborious rate, has to spend significant extra time working on projects, and cannot think and concentrate about matters unrelated to work. While Dr. Gale acknowledged that Battle is aided by psychiatric counseling and medication, he stated that Battle would continue to suffer similar limitations in his ability to think and concentrate in the foreseeable future. As the credibility of his testimony was a question of fact properly resolved by the jury, this court will not disturb that finding on review. *See generally **Kammueller v. Loomis, Fargo & Co.***, 383 F.3d 779, 788 (8th Cir. 2004).

Similarly, both Battle and his wife testified about the effects that his depression and anxiety have caused in his daily life since 2003. Both said that, even with counseling and medication, Battle no longer makes household or financial decisions, or disciplines his children, because he does not have the ability to deal with extraneous or unexpected issues, conflicts, or demands outside of work. Battle focuses almost exclusively on work, because it takes him longer to complete workplace tasks since returning to his Division Manager position. While UPS claims that this evidence establishes only that Battle has a moderate limitation in his cognitive abilities, the testimony of Dr. Gale, Battle, and his wife sufficiently supports the jury's finding that Battle is disabled.

UPS next argues that there is insufficient evidence for a jury to conclude that UPS failed to engage in a good-faith interactive process with Battle to determine whether he could perform the essential functions of his position, with or without reasonable accommodation. Under the ADA, an employer is required to provide reasonable accommodations to the known physical or mental limitations of an otherwise qualified employee with a disability, unless the requisite accommodation would impose an undue hardship on the employer's business. *See* **42 U.S.C. §**

**12112(b)(5)(A)**. Where the employee requests accommodation, the employer must engage in an "informal, interactive process" with the employee to identify the limitations caused by the disability and the potential reasonable accommodations to overcome those limitations. *Fjellestad v. Pizza Hut of Am., Inc.*, 188 F.3d 944, 951 (8th Cir. 1999), *quoting* **29 C.F.R. § 1630.2(o)(3)**. An employer hinders this process when: the employer knows about the employee's disability; the employee requests accommodations or assistance; the employer does not in good faith assist the employee in seeking accommodations; and the employee could have been reasonably accommodated but for the employer's lack of good faith. *Kratzer v. Rockwell Collins, Inc.*, 398 F.3d 1040, 1045 (8th Cir. 2005), *citing Ballard v. Rubin*, 284 F.3d 957, 960 (8th Cir. 2002).

It is undisputed that Battle informed UPS about his disability and immediately requested accommodations just before the end of his FMLA leave. UPS initiated the interactive process when Minesinger and Meeks met with Battle on August 1 to discuss his limitations and his request for a meeting agenda. At this meeting, UPS informed Battle that one essential function of his position was the cognitive ability to concentrate, memorize, and recall information. *See generally Heaser v. The Toro Co.*, 247 F.3d 826, 831 (8th Cir. 2001) (the employer's judgment as to which functions are essential is a relevant consideration). Because Battle presented conflicting medical reports at this meeting as to whether he could perform these functions, UPS gave Battle the option of either returning to work immediately without accommodation or delaying his return in order to seek accommodation through a continued interactive process. Battle chose the latter, as he was concerned that Meeks would continue asking him to memorize unpredictable information from the daily operations report, which he did not believe he could accomplish without some form of accommodation. He agreed to return to his physician for more complete documentation of the effects of his depression, anxiety, and obsessive-compulsive disorders.

On August 27, Battle presented UPS with an updated report from Dr. Gale, which stated that Battle could perform his essential job functions, but that he could not perform the "marginal" function of memorizing minute, unpredictable information from the daily operations report. Dr. Gale reiterated that Battle needed an agenda to define which report categories he must memorize before each meeting with Meeks. While Meeks testified that Battle was never required to memorize any information, UPS told Battle this was an essential job function, and that it would not allow him to return to work until an accommodation was reached. When the parties met again on September 30, UPS informed Battle that it did not understand his request for an agenda, and asked him to refine it in order to reach an appropriate accommodation. To fulfill UPS's request, Battle asked for a formal job description, which was not provided. No other workplace accommodations were discussed.

After the September 30 meeting, Dr. Gale submitted another report to UPS stating that Battle was fully capable of performing all essential job functions. While UPS management responded that it was encouraged by this report, it felt that the report did not clearly state that Battle could perform his duties without accommodation. In response, Battle had Dr. Gale reiterate his findings in an October 15 letter to UPS clearly stating that Battle could return to work without accommodation. After receiving this final letter, UPS agreed to reinstate as a Division Manager on October 27, without accommodation.

While UPS engaged in an interactive process with Battle, the jury apparently believed that UPS did not act in good faith after Dr. Gale submitted his August 27 report indicating that Battle could satisfactorily perform essential job functions, with or without accommodation, and Battle submitted the ADA accommodation form. The completed verdict form supports this conclusion, as the jury awarded backpay only for the months of September and October – after Dr. Gale clarified that Battle needed accommodation only to perform the "marginal" job function of memorizing intricate information from the daily operations report, and Battle completed the ADA

accommodation form. As Meeks testified that he did not require Battle to memorize this information, the jury could conclude that this was only a marginal function that easily could have been eliminated, necessitating Battle's reinstatement as Division Manager at the end of August. Given the record support for the jury's findings, UPS was not entitled to judgment as a matter of law on this issue.

Finally, UPS argues that, even if it did not engage in a good-faith interactive process, no reasonable accommodation was available. Under the ADA, if no reasonable accommodation is available, an employer is not liable for failing to engage in a good-faith interactive process. *Fjellestad*, 188 F.3d at 952. UPS argues that Battle failed to carry his burden of establishing that his request for an agenda was a reasonable accommodation. *Stafne v. Unicare Homes*, 266 F.3d 771, 774 (8th Cir. 2001).

As discussed, the jury apparently believed Battle needed only an agenda to assist him with the "marginal" job function of memorizing intricate, unpredictable data from the daily operations report. As Meeks testified that memorization was not required, and Dr. Gale testified that Battle could perform all other functions as of August 27, this should have allowed Battle's return to work without further inquiry whether the requested agenda was a reasonable accommodation.

Nevertheless, Battle presented evidence from which the jury could conclude that his request for an agenda was a reasonable request for accommodation. Specifically, Battle told UPS that he needed advance notice only of the categories of information from the daily operations report that he and Meeks would discuss. While UPS responded that such advance notice would delay its operations, UPS instituted a similar accommodation for all Division Managers shortly after Battle returned to work. By December 2003, UPS had equipped all Division Managers with a computer-based search mechanism that allows access to all detailed information that they need for their meetings with District Manager Meeks. As the jury was left to judge the

-11-

credibility of the witnesses and there is record support for the jury's findings, this court upholds the failure-to-accommodate verdict and denies UPS's motion for judgment as a matter of law.

## III.

Battle appeals the summary judgment for UPS on his FMLA reinstatement claim. This court reviews a grant of summary judgment de novo. *Fenney v. Dakota, Minn. & E. R.R. Co.*, 327 F.3d 707, 711 (8th Cir. 2003). The decision of the district court is affirmed if, viewing the evidence in favor of the non-moving party, there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *See Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 255 (1986); *Davis v. Hall*, 375 F.3d 703, 711 (8th Cir. 2004).

The district court granted UPS's summary judgment motion because Battle failed to establish that he could perform the essential functions of his position as Division Manager when he sought to return to work at the conclusion of his FMLA leave *at the beginning of August 2003*. Unlike the ADA, the FMLA does not mandate that employers reinstate employees who are unable to perform the essential functions of their positions. *See Hatchett v. Philander Smith Coll.*, 251 F.3d 670, 677 (8th Cir. 2001); *Reynolds v. Phillips & Temro Indus., Inc.*, 195 F.3d 411, 414 (8th Cir. 1999). Similarly, the FMLA omits any requirement that employers seek to reasonably accommodate employees who cannot perform the essential functions of their respective positions. *See* **29 C.F.R. § 825.214(b)**; *Tardie v. Rehab. Hosp. of Rhode Island*, 168 F.3d 538, 544 (1st Cir. 1999). Any duty to accommodate the employee is governed solely by the ADA. **29 C.F.R. § 825.214(b)**.

On appeal, Battle contends that he was able to perform the essential functions of his position without accommodation when he *initially* requested reinstatement during the August 1 meeting at UPS. As the district court found, however, according

to the medical information then provided UPS, Battle was substantially limited in his abilities of thinking and concentrating and needed workplace accommodations in order to adequately perform his duties at work. While Battle consistently told UPS that he wanted to return to work, he also stated that he needed the accommodations detailed in his July 28 letter (and in subsequent medical reports) to perform his tasks as Division Manager. Importantly, it was the end of August when (1) Dr. Gale changed his medical opinion about the effects of Battle's depression and anxiety on his ability to perform his essential job functions, and (2) Battle submitted the completed ADA accommodation form. As the essential functions of Battle's job included having the cognitive ability to concentrate, memorize, and recall, and Battle and his physicians admitted that he could not perform these essential functions when he *initially* sought return to work, the district court did not err in granting summary judgment to UPS on this issue.

## IV.

Battle also appeals the grant of UPS's motion for judgment as a matter of law on punitive damages under the ADA. This court reviews a grant of judgment as a matter of law de novo, employing the same standards as the district court in determining whether there is a legally sufficient basis for a jury to award punitive damages. *See **Ruzicka Elec. & Sons v. Int'l Bhd. of Elec. Workers, Local 1, AFL-CIO**,* 427 F.3d 511, 519 (8th Cir. 2005).

Under the ADA, punitive damages are available to employees who suffer intentional discrimination by an employer who acts with malice or reckless disregard of a federally protected right. *See **42 U.S.C. § 1981a(b)(1)**; **Ollie v. Titan Tire Corp.**,* 336 F.3d 680, 688 (8th Cir. 2003). In *Kolstad v. American Dental Association*, the Supreme Court clarified that "'malice or 'reckless indifference' pertain to the employer's knowledge that it may be acting in violation of federal law, not its awareness that it is engaging in discrimination." 527 U.S. 526, 535 (1999).

Accordingly, plaintiffs face a "formidable burden" in seeking to recover punitive damages in employment discrimination cases such as this. *See Webner v. Titan Distrib., Inc.*, 267 F.3d 828, 837 (8th Cir. 2001), *quoting Henderson v. Simmons Foods, Inc.*, 217 F.3d 612, 618 (8th Cir. 2000).

Battle claims that he is entitled to punitive damages because UPS employs a "100% healed policy" before employees with disabilities may return to work, which he claims flagrantly violates the ADA. As the district court found, however, the evidence at trial did not establish that UPS has such a policy. This court concludes, after a de novo review, that the district court did not commit clear error in reaching this factual conclusion from the evidence. *See, e.g., A & L Labs., Inc. v. Bou-Matic LLC*, 429 F.3d 775, 780 (8th Cir. 2005). Accordingly, the grant of judgment as a matter of law to UPS on the issue of punitive damages is affirmed.

V.

The judgment of the district court is affirmed.

_____