# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-2346

_____

| | | |
|---|---|---|
| Floyce Reed Peyton, | * | |
| | * | |
| Appellant, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Eastern |
| | * | District of Arkansas |
| Fred's Stores of Arkansas, Inc., | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: January 14, 2009
Filed: April 15, 2009

_____

Before MURPHY and SMITH, Circuit Judges, and LIMBAUGH,[1] District Judge.

_____

LIMBAUGH, District Judge.

Plaintiff Floyce Peyton brought this action to recover damages from her former employer, Fred's Stores, pursuant to the Americans With Disabilities Act (ADA), 42 U.S.C. sec. 12101 et seq. The District Court[2] entered summary judgment in favor of defendant. The dispositive issue is whether plaintiff, who became ill from cancer, was

_____

[1]The Honorable Stephen N. Limbaugh, Jr., United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The Honorable Brian Stacy Miller, United States District Judge for the Eastern District of Arkansas.

qualified to perform the essential functions of her job with or without accommodation. The judgment is affirmed.

Appellate review of summary judgment is de novo, affirming only when no genuine issue of material fact remains and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). All evidence is reviewed in the light most favorable to the non-moving party. Celotex, 477 U.S. at 330 n.2. "Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant." Crawford v. Runyon, 37 F.3d 1338, 1341 (8th Cir. 1994); Bassett v. City of Minneapolis, 211 F.3d 1097, 1099 (8th Cir. 2000). However, summary judgment is proper if the plaintiff fails to establish any element of his or her prima facie case. Wilking v. County of Ramsey, 153 F.3d 869, 873 (8th Cir. 1998); Cravens v. Blue Cross and Blue Shield of Kansas City, 214 F.3d 1011, 1016 (8th Cir. 2000).

I.

The facts of the case, viewed in the light most favorable to plaintiff, the non-moving party, are as follows:

On December 5, 2005, plaintiff, an experienced retail store manager, was hired by defendant for the position of manager of its Heber Springs, Arkansas, store. During the remainder of December, 2005, and the first few days of January, 2006, plaintiff participated in defendant's three-week management training course, and on January 6, 2006, plaintiff assumed her new position at the Heber Springs store. On Monday morning, January 9, after working at the store only two days, plaintiff experienced pain in her abdomen which required her to consult with a physician. That same day, her physician diagnosed ovarian cancer and immediately referred her to the University of Arkansas Medical Center in Little Rock. Plaintiff told the assistant

manager at the store that she would be hospitalized, and her fiancé then delivered a note to the assistant manager signed by the physician stating, "Floyce Peyton needs to be off work at least 1/9/06. Return date unknown."

Plaintiff underwent surgery for ovarian cancer on January 12. Between January 12 and 14, the area manager for Fred's Stores called plaintiff twice at the hospital. On the first call, she asked plaintiff how she was doing, and "How can we accomodating [sic] you?" Plaintiff responded that she did not know how long she would be out, but she was under the influence of pain medication and had no recollection of any question or discussion pertaining to accommodation. The area manager then called her supervisor, the regional vice-president, to advise him of the situation with plaintiff and the need for a manager at the store, and a decision was made to replace plaintiff. On January 14, the area manager called plaintiff again, advising her that, "I have to let you go." Shortly thereafter, the then-assistant manager of the Heber Springs store was installed as manager.

Plaintiff subsequently underwent approximately six months of chemotherapy, but was given a limited release for work by her physician in March. After completing the treatment, plaintiff was physically able to perform the duties required as manager of defendant's store.

## II.

Title I of the ADA bars employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a). The ADA further defines "discrimination" to include:

not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is

an applicant or employee, unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity. . . .

*Id*. §12112(b)(5)(A)

As the statutory language indicates, ADA protection extends only to a qualified individual with a disability, namely, "an individual with a disability who, with or without reasonable accommodation, [who] can perform the essential functions of the employment position that such individual holds or desires." *Id*. § 12111(8). The ADA defines "reasonable accommodation" as:

> job restructuring, part-time or modified work schedules, reassignment to a vacant position, acquisition or modification of equipment or devices, appropriate adjustment or modifications of examinations, training materials or policies, the provision of qualified readers or interpreters, and other similar accommodations for individuals with disabilities.

42 U.S.C. § 12111(9)(B). To determine whether an accommodation for the employee is necessary, and if so, what that accommodation might be, it is necessary for the employer and employee to engage in an "interactive process." Fjellestad v. Pizza Hut of America, Inc., 188 F.3d 944, 951 (8th Cir., 1999); Cravens v. Blue Cross and Blue Shield of Kansas City, 214 F.3d 1011, 1021 (8th Cir. 2000).

> A disabled employee must demonstrate the following factors to show that an employer failed to participate in the interactive process: 1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in

seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

Fjellestad, 188 F.3d at 952 (citation omitted).

### III.

The parties here agree that plaintiff was disabled because of her illness and treatment, and their sole focus is whether plaintiff was otherwise qualified to perform the essential functions of her job either with or without accommodation.

Defendant contends, and the District Court so held, that at the time of plaintiff's termination, she was unable to come to work at all, and for that reason she was not "otherwise qualified."  As the District Court explained,

The record shows that, after three days of work, Plaintiff informed Defendant that she would be out indefinitely.  Indeed, at the time Defendant terminated Plaintiff, Defendant had no information indicating when, if ever, Plaintiff would be able to return to work.  If anything, all of the information in Defendant's possession at the time of the termination, indicated that plaintiff would not return to work in the near future.

In response, plaintiff argues that defendant failed to engage plaintiff "in the interactive process of discussing reasonable accommodation for her to continue her employment with [defendant]."  At the outset, however, she acknowledges that ordinarily it is the plaintiff employee, rather than the defendant employer, who must initiate the interactive process.  Fjellestad, 188 F.3d at 952.  Nonetheless, she maintains that it was incumbent on defendant to initiate the process because she was still hospitalized and heavily medicated.  In the absence of an 8th Circuit case directly supporting her proposition, and by analogy to cases involving an employee with a

mental illness, she cites <u>Bultemeyer v. Fort Wayne Community Schools</u>, 100 F.3d 1281 (7th Cir. 1996), which held that "if it appears that the employee may need an accommodation but doesn't know how to ask for it, the employer should do what it can to help." *Id*. at 1285. Plaintiff then adds that the brief conversation on January 12 in which the area manager appears to have initiated the interaction process by asking "How can we accommodating [sic] you?" (to which she replied, "I don't know. Indefinitely.") was wholly insufficient.

Despite the unfortunate circumstances of plaintiff's illness, the ADA does not provide for a recovery against her employer. As noted, it is axiomatic that a person who cannot perform any of the functions of a job, with or without reasonable accommodation, cannot, as a matter of law, be considered "otherwise qualified" under the ADA. That is the case here. Although plaintiff was given a limited release to seek employment in March of 2006, she concedes that her illness and treatment prevented her from performing the duties as defendant's store manager during the six months of chemotherapy. On the issue of reasonable accommodation, she admits that at the time of termination she had no idea when, if ever, she would be able to return and that a request for an indefinite leave of absence (regardless which party had the obligation to request it) is not a reasonable accommodation under the ADA. <u>Nowak v. St. Rita High School</u>, 142 F.3d 999, 1004 (7th Cir. 1998); <u>Duckett v. Dunlop Tire Corp.</u>, 120 F.3d 1222, 1225-26 (11th Cir. 1997); <u>Myers v. Hose</u>, 50 F.3d 278, 283 (4th Cir. 1995); *see also,* <u>Ragsdale v. Wolverine Worldwide, Inc.</u>, 1998 WL 35169227,*7 (E.D. Ark. 1998). Instead, her request for reasonable accommodation, though made for the first time in this case, is that defendant should have waited indefinitely to determine the full extent of her diagnosis, treatment and recovery. To the extent that this argument is something other than a reconstituted claim for an indefinite leave of absence -- which it appears to be -- the claim still fails. Courts recognize that employers should not be burdened with guess-work regarding an employee's return to work after an illness. The Eighth Circuit has addressed the matter head on:

Employers are not qualified to predict the degree of success of an employee's recovery from an illness or injury. To afford . . . protections of the ADA during the early stages of . . . recuperation from surgery, . . . would be to burden [the employer] with the duty to see into the future. We do not believe that such was the intent of Congress in passing the ADA.

Browning v. Liberty Mutual Insurance Co., 178 F.3d 1043, 1049 (8th Cir. 1999).

## IV.

In sum, the uncontroverted evidence shows that plaintiff's illness caused her to be unable to perform the essential functions of her job as defendant's store manager and that there was no reasonable accommodation that would have allowed her to do so. Accordingly, the judgment is affirmed.

_____