# United States Court of Appeals

### For the Eighth Circuit

_____

No. 18-2333

_____

Tasha M. McNeil,

*Plaintiff - Appellant*,

v.

Union Pacific Railroad Company,

*Defendant - Appellee*.

------------------------------

ACLU Nebraska Foundation,

*Amicus on Behalf of Appellant*.

_____

Appeal from United States District Court
for the District of Nebraska - Omaha

_____

Submitted: May 16, 2019
Filed: August 26, 2019

_____

Before COLLOTON, MELLOY, and SHEPHERD, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Tasha McNeil sued Union Pacific Railroad Company, alleging discrimination and retaliation in violation of the Americans with Disabilities Act (ADA), Title VII of the Civil Rights Act, the Family and Medical Leave Act (FMLA), and the Nebraska Fair Employment Practice Act (NFEPA). The district court[1] granted summary judgment in favor of Union Pacific on all claims. McNeil appeals, and we affirm.

I.

Tasha McNeil is a black woman who was employed by Union Pacific. She worked as a critical call dispatcher in the company's 24-hour dispatch call center. As a dispatcher, McNeil was responsible for "[r]espond[ing] timely and with a sense of urgency to incoming phone calls related to critical incidents on or near railroad property to ensure employee and public safety."

Union Pacific dispatchers are typically scheduled to work five consecutive days each week. Each workday consists of an 8.25-hour shift. Only one dispatcher is allowed to leave the center at a time, and dispatchers are not allowed to end their shift until they are relieved by the next shift's dispatcher. They are expected to remain to resolve ongoing calls even after their shift has ended. A dispatcher's shift is color-coded to represent overtime expectations for the employee. Depending on which color shift the dispatcher is scheduled to work, the dispatcher may be expected to work overtime if another employee fails to show up to work. In that situation, a dispatcher is required to work up to four additional hours either before or after her original shift.

---

[1]The Honorable Laurie Smith Camp, then Chief Judge, United States District Court for the District of Nebraska.

McNeil took short-term disability leave from December 2012 until January 2013 due to complications from a pregnancy. She then took maternity leave until June 17, 2013, when she returned to work. Shortly after her return, she requested training to help her readjust to work after six months of leave, but her supervisor denied the training. At a later date, McNeil's supervisor disciplined her for an incident that occurred because she was not familiar with the switchboard mapping system; McNeil claimed that the incident stemmed from the earlier denial of training.

In January 2014, the company granted McNeil leave under the Family and Medical Leave Act to care for her sick mother. In February 2014, she received short-term disability benefits for depression. In May 2014, McNeil's doctors determined that she could return to work in June on a part-time schedule. McNeil's physician cleared her to work four days a week from 6:15 a.m. to 2:30 p.m. Her physician specified that the restriction was temporary, and that she would be able to undertake a full-time schedule on August 1. Union Pacific prepared to accommodate her temporary restrictions, but McNeil ultimately decided not to return and instead transitioned to long-term disability leave.

In August 2014, McNeil notified Union Pacific's employee benefits administrator that she may be ready to return to work on September 2. Three weeks later, Union Pacific received McNeil's medical records and work restrictions. The records included a letter from her doctor stating: "It is my professional medical opinion that Tasha MCNEIL may return to work on 09/02/2014. Please allow her only morning shifts and no overtime." A Union Pacific employee followed up with McNeil about the restrictions, and McNeil told her that she was restricted to "day hours only and no overtime until January."

The next month, McNeil e-mailed the company to inquire about her work status, and an employee informed her that the call center was unable to accommodate her restrictions and had no vacancies. A week later, McNeil received a formal letter

from Union Pacific saying that her "supervising department has been unable to identify a reasonable accommodation that will permit [her] to safely return to work in [her] assigned position."

McNeil called a manager seeking information about why Union Pacific denied her request to return to work. During the call, she told the manager that her medical restrictions were not permanent. The supervisor told McNeil that if that were so, then she needed to have her medical provider send a letter informing Union Pacific of her updated restrictions. Union Pacific did not receive any updated medical records, and McNeil went back on long-term disability leave. On June 24, 2015, McNeil received notice that her long-term disability benefits would soon expire. The company terminated her employment on October 28, 2015.

McNeil sued Union Pacific in Nebraska state court, alleging several claims of discrimination. Union Pacific removed the proceeding to federal court, *see* 28 U.S.C. § 1441(a), and the district court granted summary judgment for the company on all claims. Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We review the district court's grant of summary judgment *de novo*, viewing the evidence in the light most favorable to McNeil.

II.

A.

McNeil challenges the district court's grant of summary judgment on her claims under the ADA and the NFEPA that Union Pacific failed to accommodate her disability. The Nebraska statute is coextensive with the ADA in this context, *Orr v. Wal-Mart Stores, Inc.*, 297 F.3d 720, 723 (8th Cir. 2002), and our discussion proceeds under the ADA.

-4-

The ADA prohibits discrimination "against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual." *Id.* § 12112(b)(5)(A). To qualify for a position, the employee must be able to "perform the essential functions of such position." 29 C.F.R. § 1630.2(m).

An employer who disputes a failure-to-accommodate claim on the ground that the employee could not perform an essential function of the job must establish that the function at issue is essential. *Dropinski v. Douglas County*, 298 F.3d 704, 707 (8th Cir. 2002). Relevant factors include "(1) the employer's judgment as to which functions are essential; (2) written job descriptions prepared before advertising or interviewing applicants for the job; (3) the amount of time spent on the job performing the function; (4) the consequences of not requiring the incumbent to perform the function; and (5) the current work experience of incumbents in similar jobs." *Id.* (internal quotation omitted).

The district court ruled that the ability to work mandatory overtime is an essential function of a call center dispatcher. The court concluded that because McNeil's "no overtime" restriction disqualified her from the job, McNeil failed to make a *prima facie* showing that Union Pacific discriminated when it failed to accommodate the restriction. The court relied on the company's scheduling and attendance guidelines, which state that overtime is "mandated," and cited the fact that schedules "included multiple layers of redundancy to ensure staff availability for overtime work." The court observed that if a dispatcher were unable to work overtime, then either other employees would have to work overtime more often or the safety of Union Pacific operations would be impaired.

McNeil argues that there is a factual dispute about whether the ability to work overtime is an essential function. She first contends that Union Pacific's willingness

-5-

to accommodate her "no overtime" restriction in May 2014 shows that ability to work overtime is not really an essential function. Union Pacific did prepare to accommodate McNeil's restriction temporarily in May 2014 when the restriction was limited to two months. But "[a]n employer does not concede that a job function is 'non-essential' simply by voluntarily assuming the limited burden associated with a temporary accommodation, nor thereby acknowledge that the burden associated with a permanent accommodation would not be unduly onerous." *Rehrs v. Iams Co.*, 486 F.3d 353, 358 (8th Cir. 2007) (internal quotation omitted). The medical records supporting McNeil's request in September 2014 did not include an end date or otherwise specify that the restriction was temporary. The request for a permanent or indefinite accommodation presented a different and greater burden on the company. Union Pacific's earlier willingness to accommodate a two-month restriction does not create a genuine issue of fact about whether availability for overtime is an essential function.

McNeil complains that her September 2014 request also sought only a short-term restriction, but she never presented clarifying medical records to establish that fact. The doctor's letter identified no ending date for the overtime restriction. After McNeil told Union Pacific that the restriction would end in January 2015, the company told her to have the physician send a communication clarifying the nature and duration of the restriction. Yet Union Pacific never received any additional information from McNeil's physician. Union Pacific was thus "entitled to rely and act upon the written advice from [McNeil's] physician" when deciding whether it could accommodate her restrictions. *Alexander v. Northland Inn*, 321 F.3d 723, 727 (8th Cir. 2003).

McNeil next asserts that "mandatory overtime" cannot be an essential function of the dispatcher job because Union Pacific has accommodated other employees who also had overtime restrictions. Justin Larsen was able to work only "an occasional 12 hour shift." Dennis McCabe was limited to working "10 hour days as tolerated."

-6-

Darcey Brinson was limited to "[o]ccasional (up to 33% of the time) early call in or overtime." Although these employees could not be available for up to four hours of overtime, as was typically expected, they could work *some* overtime. They could occasionally manage incoming calls that extended beyond a shift change or cover for absent employees for some duration on certain occasions. McNeil's restriction allowed none of this activity. Union Pacific's accommodation of the other employees thus does not undermine its position that ability to work mandatory overtime is an essential function.

McNeil also challenges the district court's failure to consider whether Union Pacific violated its duty to engage in the interactive process. To show an employer breached its duty to engage in the interactive process, an employee must show "1) the employer knew about the employee's disability; 2) the employee requested accommodations or assistance for his or her disability; 3) the employer did not make a good faith effort to assist the employee in seeking accommodations; and 4) the employee could have been reasonably accommodated but for the employer's lack of good faith." *Peyton v. Fred's Stores of Ark., Inc.*, 561 F.3d 900, 902 (8th Cir. 2009) (internal quotation omitted). The district court ruled that Union Pacific was not liable on this theory because no reasonable accommodation was available. *See Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 864 (8th Cir. 2006).

McNeil contends that Union Pacific was required to contact her medical provider to determine whether the duration of the restriction was short-term or long-term. But McNeil knew that the company believed her restriction was a long-term restriction, and she never arranged for a follow-up communication from her doctor. Her failure to do so "supports the conclusion that she, not [Union Pacific], stalled the interactive process." *Russell v. TG Mo. Corp.*, 340 F.3d 735, 741-42 (8th Cir. 2003).

McNeil also complains that Union Pacific contacted medical providers on behalf of another employee and should have done the same for her. Union Pacific did

request clarification when it received notice of the restrictions for employee Darcey Brinson. But Brinson's restrictions, as communicated by her doctor, were inscrutable in light of the Union Pacific dispatcher schedule: Brinson's physician communicated that her restriction was "[f]irst shift work only," but Union Pacific does not have a "first shift," so clarification was required. McNeil's doctor, by contrast, wrote that she was restricted to "no overtime" and gave no ending date. This restriction was not unclear on its face, so the company's failure to make inquiry with McNeil's doctor does not show disparate treatment of McNeil and Brinson.

McNeil next argues that Union Pacific failed to engage in the interactive process because the company did not act in good faith to help her find a different position for which she was qualified. But when Union Pacific notified McNeil that it could not accommodate her "no overtime" restriction, it also offered to assign a member of its "Disability Prevention and Management Team" to help her "develop a plan for [her] vocational future." The staff member would teach McNeil "how to access information about [Union Pacific] vacancies," and "[a]ssist [her] with the application process." The letter informed McNeil that she needed to accept the service by calling a toll-free number within thirty days of the letter. McNeil never requested this assistance, and her failure to do so forecloses a claim that Union Pacific failed to engage.

For these reasons, we agree with the district court that McNeil was not qualified for the dispatcher position as a matter of law, because she was unable to work mandatory overtime. We also conclude that there is insufficient evidence to create a genuine dispute about whether Union Pacific failed to engage in the interactive process. We thus affirm the grant of summary judgment for Union Pacific on McNeil's claims of disability discrimination.

B.

McNeil also appeals the district court's grant of summary judgment on her claim of discrimination based on sex and pregnancy. The district court ruled that McNeil suffered no adverse action when her supervisor denied her requested training or commented on the length of her breast pumping breaks, and that the evidence did not give rise to an inference of discrimination in any event.

McNeil asserts that Union Pacific took adverse actions against her when it failed to train her upon return from maternity leave and when it failed to accommodate her need to pump breast milk. Neither action qualifies. The supervisor's denial of her training request was not "a tangible change in working conditions that produces a material employment disadvantage," *Thomas v. Corwin*, 483 F.3d 516, 528 (8th Cir. 2017) (internal quotation omitted), so it was not an adverse employment action. By McNeil's own admission, Union Pacific *did* accommodate her need to breast pump when she returned from maternity leave, so there was no adverse action on that basis either.

McNeil also contends that the district court erred because it did not consider whether Union Pacific's failure to accommodate McNeil's disability and the company's termination of her employment were adverse employment actions. She has not presented sufficient evidence, however, to show that these actions were motivated by sex or pregnancy. She does not identify any valid comparator employee who was treated differently. There is no other evidence to undermine the company's position that it acted based on McNeil's inability to work overtime and the expiration of her long-term disability benefits. The district court thus did not err by granting summary judgment on McNeil's sex and pregnancy claim.

The district court also granted summary judgment on McNeil's race discrimination claim. The court reasoned that her "proffered comparators were all

able to, and did in fact, work overtime," so they were not employees whose treatment might support an inference of discrimination. McNeil presented evidence that Union Pacific accommodated three white employees who had some overtime restrictions, but those employees were not similarly situated to McNeil. As discussed, Larsen, McCabe, and Brinson were all able to work some overtime, while McNeil could not provide any overtime work. McNeil argues that these comparators were similarly situated because they never actually worked overtime. The essential function, however, was the *availability* to work overtime. The restrictions of each of these employees allowed the company to schedule them to work some measure of overtime if necessary, while McNeil was entirely unavailable. The district court properly granted summary judgment on the race discrimination claim.

McNeil briefly mentions her two retaliation claims but does not develop any argument about why the district court allegedly erred in dismissing them. Accordingly, those claims are not presented on appeal.

*     *     *

The judgment of the district court is affirmed.

_____

-10-