# United States Court of Appeals
### For the Eighth Circuit

_____

No. 22-1035
_____

Michael James Winters

*Plaintiff - Appellant*

v.

Deere & Company

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Northern District of Iowa - Eastern
_____

Submitted: October 19, 2022
Filed: March 23, 2023
_____

Before KELLY, WOLLMAN, and KOBES, Circuit Judges.
_____

KOBES, Circuit Judge.

After Michael Winters was fired by John Deere & Co., he sued Deere for failing to accommodate his disability and discriminating against him in violation of

the Iowa Civil Rights Act (ICRA). The district court[1] granted summary judgment to Deere, and we affirm.

## I.

Winters worked for Deere for over thirty years. Beginning in 2016, Deere gave Winters Family and Medical Leave Act (FMLA) leave and other medical leave to accommodate his anxiety and depression. In late 2018, Winters took nearly four months of medical leave and returned to work in March 2019. In his first two months back from work, Winters was absent 12 days more for vacation or sickness. In May 2019, after Winters's supervisor Jared Morrison declined a vacation request, Winters requested every Friday off through the winter. That June, Morrison and HR representative Amanda Smith issued a written warning to Winters for his excessive "unplanned and unexcused absences." The warning also acknowledged that Winters had been approved for FMLA leave in the past and encouraged him to sign up for it again if needed.

At one point, Winters told Morrison that he felt "like putting a gun to [his] head every morning." D. Ct. Dkt. 22-3 at 7, ¶ 37. In response, Deere attempted to schedule Winters a meeting with an occupational health physician and a psychiatrist, which didn't happen because of a scheduling conflict. HR manager Tabitha Leslie asked Winters to take paid leave and get psychiatric and fitness for duty evaluations before returning to work.

Winters returned without any restrictions in late September. Winters met with Leslie to help him transition back. Deere provided evidence that Leslie offered to sit in on discussion between Winters and Morrison, but Winters declined. There is also evidence that Leslie asked Winters if there was anything he needed from her to

---

[1]The Honorable Leonard T. Strand, Chief Judge, United States District Court for the Northern District of Iowa.

support his transition back to work. It's undisputed that Winters did not ask for any accommodations.

Winters also met with Morrison, who gave Winters critical feedback. After the meeting, Winters confronted a coworker whom he blamed for the bad feedback. Winters then requested three days of vacation to regroup, which HR approved. He returned to work again the following Monday, and worked through Thursday. He took a vacation day that Friday.

On October 8, Winters asked for a meeting with Morrison. At that meeting, Winters raised his voice. Winters testified that he told Morrison "I will fight you to the end on this" and "it will not turn out good . . . . for one of us." D. Ct. Dkt. 22-3 at 10, ¶ 61. This was the first time that Winters yelled at Morrison. Both men contacted HR, and Winters told Smith that he didn't regret what he said to Morrison.

Smith and Leslie then consulted with the HR Operation Lead, who approved Smith's recommendation to fire Winters. The next morning, Leslie terminated Winters over the phone while Winters was at work. This was the first time Leslie had fired someone over the phone. Winters remained calm during the conversation, and was escorted off the premises. Later that day, at Deere's request, a county deputy advised Winters that he should not contact Morrison or go to his home.

Winters sued Deere, alleging failure to accommodate his disability, disability discrimination, age discrimination, harassment, and retaliation under the ICRA. The district court granted summary judgment to Deere on all claims. Winters appeals the district court's judgment on his disability and failure to accommodate claims.

II.

We review the district court's grant of summary judgment *de novo*. *See Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017). Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The parties do not dispute the application of federal analysis, so "[w]e analyze ADA and ICRA disability discrimination claims under the same standards." *Gardea v. JBS USA, LLC*, 915 F.3d 537, 541 (8th Cir. 2019); *see also Gretillat v. Care Initiatives*, 481 F.3d 649, 652 (8th Cir. 2007).

## A.

Winters argues that there are genuine disputes of material fact about whether Deere failed to reasonably accommodate his disability; namely whether Deere engaged in an "informal, interactive process" to accommodate him. "Where the employee requests accommodation, the employer must engage in an informal, interactive process with the employee to identify the limitations caused by the disability and the potential reasonable accommodations to overcome those limitations." *Battle v. United Parcel Serv., Inc.*, 438 F.3d 856, 862 (8th Cir. 2006) (citation omitted). "An employer hinders this process when: the employer knows about the employee's disability; the employee requests accommodations or assistance; the employer does not in good faith assist the employee in seeking accommodations; and the employee could have been reasonably accommodated but for the employer's lack of good faith." *Id.* at 862–63.

Winters cannot make a prima facie case for failure to accommodate because he never requested an accommodation at the relevant time. In fact, Deere encouraged Winters to request accommodations and accommodated him before when he asked. And when Winters returned to work in September 2019, he had been cleared of all restrictions. Because Winters has not shown that Deere knew he needed an accommodation on his return to work, his claim fails. *See Mole v. Buckhorn Rubber Prods., Inc.*, 165 F.3d 1212, 1218 (8th Cir. 1999) (even though the employer was aware of and accommodated the plaintiff's disability previously, "[she] cannot expect the employer to read her mind and know she secretly wanted a particular accommodation and then sue the employer for not providing it." (cleaned up)).

## B.

Winters next argues that there is a genuine dispute of material fact about whether Deere wrongfully discriminated against him because of his disability. A prima facie case for a discrimination claim under the ICRA requires that Winters show: "(1) he has a disability, (2) he is qualified to perform the essential functions of [the job], and (3) the circumstances of his termination raise an inference of illegal discrimination." *Rumsey v. Woodgrain Millwork, Inc.*, 962 N.W.2d 9, 22 (Iowa 2021) (citation omitted). Winters can prove intentional discrimination through direct or indirect evidence. *See Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 543 (8th Cir. 2018).

### i.

Winters has not provided any direct evidence of discrimination that "shows a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *St. Martin v. City of St. Paul*, 680 F.3d 1027, 1033 (8th Cir. 2012) (citation omitted). The district court correctly found that Morrison's thoughts, beliefs, and statements were not direct evidence because he was not involved in the decision to fire Winters. *See Schierhoff v. GlaxoSmithKline Consumer Healthcare, L.P.*, 444 F.3d 961, 966 (8th Cir. 2006) ("[S]tray remarks in the workplace, statements by nondecisionmakers, and statements by decisionmakers unrelated to the decisional process do not constitute direct evidence." (citation omitted)). To the extent that Winters argues that the decisionmakers' knowledge of Winters's disability is direct evidence, his argument fails. Mere knowledge of a disability is not the same as discriminatory animus.

### ii.

Because Winters must prove discrimination with indirect evidence, we turn to the *McDonnell Douglas* burden-shifting framework. *See McDonnell Douglas Corp.*

*v. Green*, 411 U.S. 792 (1973). First, Winters must establish a prima facie case of discrimination. *Id.* at 802. The burden then shifts to Deere to present evidence of a legitimate, non-discriminatory reason for the adverse action. *Id.* If there is a sufficient reason, the burden shifts back to Winters to show the proffered reason is pretext for discrimination. *Id.* at 807.

We assume without deciding that Winters can establish a prima facie case, *see McKey v. U.S. Bank Nat'l Ass'n*, 978 F.3d 594, 599 (8th Cir. 2020), so the question is whether Deere had a legitimate reason for firing Winters. Deere argued that it terminated him because of a "culmination of events with the last straw being Winters'[s] conduct on October 8, 2019, and a lack of remorse for it," Winters's difficulty getting along with coworkers, and his "overall history of performance and attendance issues."[2] D. Ct. Dkt. 20-1, at 9, 11. Winters argues that this isn't a legitimate, non-discriminatory reason because he had these issues for three years. But that argument does not work, because "[a] legitimate reason for discharge may include the plaintiff's lack of improvement in the specific areas in which [he] was counseled." *Doucette v. Morrison Cnty.*, 763 F.3d 978, 983 (8th Cir. 2014) (citation omitted).

Next, we examine whether Winters can demonstrate that Deere's reason for his termination was pretextual. To show pretext, Winters "must present sufficient evidence to demonstrate both that the employer's articulated reason for the adverse employment action was false and that discrimination was the real reason." *Lindeman v. Saint Luke's Hosp. of Kan. City*, 899 F.3d 603, 606 (8th Cir. 2018) (citation omitted). "A plaintiff may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 874 (8th Cir. 2010). But Winters "must do more than simply create a factual dispute as to the issue of pretext;

---

[2]"[N]amely Winters'[s] inability to receive feedback without threats or raising his voice with colleagues and his supervisor, and to continue working without taking time off." D. Ct. Dkt. 20-1 at 9.

he must offer sufficient evidence for a reasonable trier of fact to infer discrimination." *Wilking v. Cnty. of Ramsey*, 153 F.3d 869, 874 (8th Cir. 1998) (citation omitted).

Winters argues that Deere violated its own policy because the compliance department didn't investigate the October 8 incident between Winters and Morrison before Deere fired him. Although it was typical for the compliance department to investigate complaints, Winters has not shown that Deere actually violated any company policy. And, "[a]lthough an employer's violation of its own policies may be indicative of pretext, that is not always so" as "[a]n employer can certainly choose how to run its business, including not to follow its own personnel policies regarding termination of an employee or handling claims of discrimination, as long as it does not unlawfully discriminate in doing so." *Schaffhauser v. United Parcel Serv., Inc.*, 794 F.3d 899, 904 (8th Cir. 2015) (citations omitted). Even if Deere violated its own policy, Winters has not shown how it discriminated against him.

Winters also argues that he had no history of formal discipline or of threatening anyone at Deere. Yet Winters was formally warned about his excessive absences. And while he did not have a history of threatening anyone, the record shows that he had a history of difficulty with other employees.[3] Winters also hasn't provided evidence for a reasonable jury to infer that discrimination based on his disability was the real reason for his termination. *See Lindeman*, 899 F.3d at 606. Winters's other arguments[4] fail in the same way: "No specific facts suggest that

---

[3]Winters's coworkers suggested that he made inappropriate statements to others, and that he made others uncomfortable. Additionally, comments about Winters needing to improve his relationships with the other employees and about how Winters would talk with employees appear in his performance reviews for 2013, 2014, and 2016. Still, with the exception of Winters's 2016 performance review, Morrison gave Winters a "successful performance" rating in the "people rating" category every year between 2013 and 2018.

[4]For example, that Deere's decision to terminate him was made in a thirty-minute meeting with no due diligence conducted; that Deere decided to use the October 8 argument as pretext to discriminate against Winters because Deere was

[Deere's] actions were more likely motivated by [disability] than by its proffered justification." *See Schaffhauser*, 794 F.3d at 905.

As the district court noted, Winters's suggestion that his actions weren't serious enough to merit his termination "merely questions the soundness of [Deere's] judgment, and does not demonstrate pretext for discrimination." *Wilking*, 153 F.3d at 874 (citation omitted); *see also Clay v. Hyatt Regency Hotel*, 724 F.2d 721, 725 (8th Cir. 1984) ("While an employer's judgment may seem poor or erroneous to outsiders, the relevant question is simply whether the given reason was pretext for illegal discrimination.").

III.

We affirm the district court's grant of summary judgment.

_____

---

tired of accommodating Winters's disability; and that "Deere unjustifiably rushed to fire Winters, who had anxiety and depression, based on unsubstantiated claims that he was too unstable and dangerous to perform his job." Winters Br. 38.