# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1073

_____

Jerry Lee Faidley

*Plaintiff - Appellant*

v.

United Parcel Service of America, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: December 15, 2016
Filed: April 4, 2017

_____

Before KELLY and MURPHY, Circuit Judges, and MONTGOMERY,[1] District
Judge.

_____

MURPHY, Circuit Judge.

Plaintiff Jerry Faidley worked as a delivery driver for defendant United Parcel
Service of America (UPS). His doctor restricted his work activity after he hurt his

_____

[1]The Honorable Ann D. Montgomery, United States District Judge for the
District of Minnesota, sitting by designation.

back, and UPS did not offer him another full time position that he was able to perform. He sued for disability discrimination and retaliation. The district court granted summary judgment to UPS on all claims. Faidley appeals, and we affirm in part, reverse in part, and remand.

I.

Jerry Faidley worked for UPS as a package delivery driver. After he injured his back twice and had hip surgery, his doctor restricted his work day to eight hours. When UPS learned of this restriction in 2012, it prohibited him from working as a delivery driver because that position requires employees able to work nine and a half hours per day. His manager also told him that his career at UPS was over because the company would not employ someone with a permanent restriction.

Faidley went on unpaid leave and sought a disability accommodation. He proposed working either as a delivery driver with a daily limit of eight hours or at a less physically demanding position without accommodations. One of the other jobs UPS considered was feeder driver, which involves driving trailers between UPS locations and is less physically strenuous than the delivery driver role. The company did not offer Faidley this position, however, because it was unavailable at the time. UPS then offered him a part time job that would have reduced his seniority. He declined to accept that position and sued UPS under the Americans with Disabilities Act (ADA) and Iowa Civil Rights Act (ICRA) for a failure to accommodate his disability.

Several months later, Faidley's doctor issued a new restriction that allowed him to work with no limit on his hours at any job other than delivery driver. In early 2013 Faidley found a new position at UPS as a combined pre loader and loader. In the pre loader role, he loaded packages into delivery trucks. As a loader, he stacked packages in semi trailers. This combined role proved too physically demanding and

-2-

caused Faidley a great deal of pain. His doctor then limited him to working four hours per day for five weeks as a pre loader rather than a loader. Faidley asked to work a reduced schedule but UPS refused because he had previously used all of his available time in its temporary alternative work program.

Faidley later received another set of work restrictions. UPS then reinitiated the accommodation process, but no full time positions that fit his restrictions were available. UPS offered him a part time position that he declined. Faidley retired later that year. He then sued UPS a second time under the ICRA for disability discrimination and retaliation arising from its alleged failure to accommodate him in 2013. The district court consolidated the 2012 and 2013 actions and granted summary judgment to UPS. Faidley appeals.

## II.

We review the "grant of summary judgment de novo, viewing the facts in the light most favorable to the nonmoving party and making every reasonable inference in his favor." McPherson v. O'Reilly Auto., Inc., 491 F.3d 726, 730 (8th Cir. 2007). Summary judgment is warranted "if the record shows there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Id.; see also Torgerson v. City of Rochester, 643 F.3d 1031, 1042–43 (8th Cir. 2011) (en banc).

## A.

We first address Faidley's 2012 disability discrimination claim. We use the same standards to analyze ADA and ICRA discrimination claims. Tjernagel v. Gates Corp., 533 F.3d 666, 671 (8th Cir. 2008). The ADA prohibits private employers from discriminating against qualified individuals based on disability. Kallail v. Alliant Energy Corp. Servs., Inc., 691 F.3d 925, 930 (8th Cir. 2012). Discrimination includes

a failure to provide "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability." Id. (quoting 42 U.S.C. § 12112(b)(5)(A)). To prove disability discrimination, an employee must establish "that he (1) has a disability within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment action as a result of the disability." Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (internal quotation marks omitted). Neither party disputes that Faidley was disabled and thus satisfies the first element of this claim.

With respect to the second element, an employee is a qualified individual under the ADA if he "(1) possess[es] the requisite skill, education, experience, and training for [his] position; and (2) [is] able to perform the essential job functions, with or without reasonable accommodation." Kallail, 691 F.3d at 930 (quoting Fenney, 327 F.3d at 712). Essential job functions "are the fundamental duties of the job, but not its marginal functions." Id.

Faidley claims to have been qualified to perform the jobs of feeder driver and delivery driver in 2012. The district court correctly concluded as a matter of law that Faidley was not qualified to perform the essential job functions for the delivery driver position. That job required the ability to work more than eight hours per day, and the record is clear that Faidley was limited to working no more than eight hours per day.

We conclude, however, that the district court erred by determining as a matter of law that Faidley was unable to perform the essential job functions of the feeder driver position. UPS claims that Faidley was unqualified for this position because it sometimes required working more than eight hours per day. A good deal of evidence supports this claim. Faidley referred in his affidavit to "the required 9.5 hours per day for that position." Human resources manager Vince Blood wrote on a 2012 accommodation worksheet, however, that Faidley "preliminarily appear[ed] capable of performing the essential job functions" of the feeder driver role. On the same

-4-

form, he wrote that Faidley could work no more than eight hours per day. We conclude that is sufficient to create a genuine issue of material fact on Faidley's claim that he was qualified to perform the essential functions of the feeder driver position.

UPS argues that we should not consider the feeder driver position because it was not available when Faidley went through the accommodation process. In accord with guidance from the Equal Employment Opportunity Commission, 29 C.F.R. Pt. 1630 app. § 1630.2(o), other circuits have considered as available "positions that the employer reasonably anticipates will become vacant in the fairly immediate future." Smith v. Midland Brake, Inc., 180 F.3d 1154, 1175 (10th Cir. 1999) (en banc); see also Dark v. Curry Cty., 451 F.3d 1078, 1089–90 (9th Cir. 2006). We also adopt the agency's guidance to consider such positions. In this case, Faidley has presented evidence that UPS expected that feeder driver positions would become open in the near future. We therefore conclude that Faidley has provided evidence to show that he satisfied the second element of his 2012 claim for disability discrimination.

An employee satisfies the third element of a disability discrimination claim if he shows that he suffered an adverse employment action, which "is defined as a tangible change in working conditions that produces a material employment disadvantage, including but not limited to, termination, cuts in pay or benefits, and changes that affect an employee's future career prospects, as well as circumstances amounting to a constructive discharge." Jackman v. Fifth Judicial Dist. Dep't of Corr. Servs., 728 F.3d 800, 804 (8th Cir. 2013). We conclude that Faidley has established a genuine issue of material fact as to this element. Faidley has alleged and provided evidence that UPS rejected his bids for full time positions and offered him only a part time position that would have eliminated his seniority and reduced his benefits and

pension.[2] The company effectively forced him to reduce his hours significantly and he thus suffered an adverse employment action. He also suffered such an action by the company's material reduction of his benefits. See id. Because Faidley has provided evidence to support every element of his 2012 disability discrimination claim, we conclude that the district court erred in granting summary judgment to UPS on that claim.

B.

We next address Faidley's 2013 discrimination claim. We agree with the district court that this claim fails as a matter of law because Faidley has not offered sufficient evidence that he was qualified to perform the essential job functions of any available job. The only available job he claims he could have performed was a combination loader and pre loader position on a reduced schedule for several weeks. The record shows, however, that Faidley's restrictions prohibited him from performing the role of loader. Even on a reduced schedule, he would have been unable to perform half of the combination loader and pre loader job. UPS was not required to reallocate the essential functions of this combined position. See Minnihan v. Mediacom Commc'ns Corp., 779 F.3d 803, 813 (8th Cir. 2015). Because Faidley has not provided evidence that he could have performed the essential job functions of any available job, he has not satisfied the second element of his 2013 discrimination claim.

---

[2]The district court determined that Faidley did not allege UPS took an adverse employment action against him by forcing him into part time work. Faidley did allege, however, that UPS' failure to accommodate his disability affected the "terms and conditions of his employment." He attached to his complaint the discrimination claim he had filed with the Iowa Civil Rights Commission, which specifically stated that UPS had offered him only a part time position, and that accepting that position would have eliminated his seniority and bidding rights and reduced his benefits and pension. These allegations are sufficient to encompass Faidley's theory that UPS took an adverse employment action against him by not allowing him to work full time.

Faidley also argues that UPS failed to engage him in the interactive accommodation process required by the ADA. Although "[t]here is no per se liability under the ADA if an employer fails to engage in the interactive process," an employer's failure to engage in the interactive process at the summary judgment stage "is prima facie evidence that the employer may be acting in bad faith." Minnihan, 779 F.3d at 813. To show that an employer failed to participate in the interactive process, an employee must show:

> (1) the employer knew about the employee's disability; (2) the employee requested accommodation or assistance for his or her disability; (3) the employer did not make a good faith effort to assist the employee in seeking accommodation; and (4) the employee could have been reasonably accommodated but for the employer's lack of good faith.

Cravens v. Blue Cross & Blue Shield of Kan. City, 214 F.3d 1011, 1021 (8th Cir. 2000). The employee is not necessarily entitled to the accommodation of his choice. Minnihan, 779 F.3d at 813.

Faidley has not presented evidence to show that UPS failed to make a good faith effort to help him in seeking an accommodation. He acknowledges that UPS met with him and identified positions that he and his doctor thought he could perform. Two positions which fit the restrictions were not available. UPS told Faidley that it would inform him if these positions became available, and there is no evidence that they became available before he retired. When Faidley suggested other positions he thought he could perform, UPS promptly responded that the essential functions of those positions conflicted with his restrictions. This record shows that UPS made a good faith effort to assist Faidley in seeking an accommodation. Since Faidley has failed to present a genuine issue of material fact on his 2013 discrimination claim, summary judgment is appropriate.

C.

Faidley finally claimed before the district court that in 2013 UPS did not accommodate him in retaliation for his 2012 discrimination complaint. He did not meaningfully address this claim in his opening brief, however, and therefore he has waived it. See Ahlberg v. Chrysler Corp., 481 F.3d 630, 634 (8th Cir. 2007).

III.

For these reasons we affirm with respect to the retaliation and the 2013 discrimination claims, reverse with respect to the 2012 discrimination claim, and remand for further proceedings consistent with this opinion.

KELLY, Circuit Judge, concurring in part and dissenting in part.

Like the district court and the parties did, I would treat this case as involving a single disability discrimination claim—based on events spanning 2012 and 2013—rather than as two discrete disability discrimination claims—one based on events occurring in 2012, and one based on events occurring in 2013. Therefore, because Faidley produced evidence that he was qualified for the feeder driver position, I would reverse and remand the entire matter of the alleged disability discrimination to the district court. I otherwise concur in all other aspects of the court's opinion. I appreciate the separate partial dissent's concern that employers should not be punished for exceeding the requirements of the ADA, but I think Blood's belief that Faidley could perform the job functions of a feeder driver is sufficient evidence that he was qualified for that position to survive summary judgment.

MONTGOMERY, District Judge, concurring in part and dissenting in part.

I concur that Faidley's 2013 discrimination claim fails as a matter of law, but I respectfully disagree that Faidley has raised a genuine issue of material fact on the "qualified" element of his 2012 disability discrimination claim.

The majority concludes that there is a fact question as to whether Faidley was able to perform the essential job functions of the feeder driver position. To reach its conclusion, the majority cites the 2012 accommodation worksheet where Human Resources Manager Vince Blood noted that Faidley "preliminarily appear[ed] capable of performing the essential job functions" of that position. However, it is undisputed that an essential function of the feeder driver position was the ability to work 9.5 hours per day. It is also undisputed that at the time the checklist was completed in July 2012, Faidley's physician had permanently restricted him from working over eight hours per day. This was solely a time-based restriction; Faidley was not medically restricted by his physician from performing strenuous activities. Thus, the essential functions of the feeder driver position exceeded Faidley's medical limitations. Based on this undisputed evidence, Faidley was not qualified as a matter of law to perform the essential functions of the feeder driver position for the same reason that he was not qualified as a matter of law to perform the essential functions of the delivery driver position: "That job required the ability to work more than eight hours per day, and the record is clear that Faidley was limited to working not more than eight hours per day." Ante, at 4. Vince Blood's notation on the accommodation worksheet that Faidley "preliminarily appear[ed] capable of performing the essential job functions" does not create a fact question on this issue.

In completing the accommodation worksheet, Blood was exploring positions that exceeded Faidley's express medical restriction. This was more than required by the ADA because "[t]he ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden." Alexander

v. Northland Inn, 321 F.3d 723, 727 (8th Cir. 2003). Allowing Faidley's claim to proceed based upon Blood's willingness to consider positions that were beyond Faidley's physician's restriction effectively punishes Blood for attempting to do more for Faidley than demanded by the ADA. Other circuits have cautioned against such a result. See Sieberns v. Wal-Mart Stores, Inc., 125 F.3d 1019, 1023 (7th Cir. 1997) ("Employers should not be discouraged from doing more than the ADA requires."); Lucas v. W.W. Grainger, Inc., 257 F.3d 1249, 1257 n.3 (11th Cir. 2001) ("Good deeds ought not be punished, and an employer who goes beyond the demands of the law to help a disabled employee incurs no legal obligation to continue doing so.").

For these reasons, the district court was correct to conclude as a matter of law that Faidley was unable to perform the essential functions of the feeder driver position. Accordingly, I would affirm the judgment of the district court.

_____