# United States Court of Appeals
## For the Eighth Circuit

_____

No. 16-1073

_____

Jerry Lee Faidley

*Plaintiff - Appellant*

v.

United Parcel Service of America, Inc.

*Defendant - Appellee*

------------------------------

United States Equal Employment Opportunity Commission

Amicus on Behalf of *Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Des Moines

_____

Submitted: October 17, 2017
Filed: May 11, 2018

_____

Before SMITH, Chief Judge, WOLLMAN, LOKEN, MURPHY, COLLOTON, GRUENDER, BENTON, SHEPHERD, and KELLY, Circuit Judges, *En Banc*.[*]

_____

---

[*]Judge Erickson, Judge Grasz, and Judge Stras did not participate in the consideration or decision of this matter.

LOKEN, Circuit Judge.

Jerry Faidley brought two state court actions against his former employer, United Parcel Service of America, Inc. (UPS), alleging that UPS violated the Iowa Civil Rights Act (ICRA), Iowa Code § 216, when it placed him on medical leave from his long time position as a package car driver and then failed to reasonably accommodate his physical disability. After UPS removed the actions based on diversity of citizenship, Faidley filed an amended complaint in the first action adding claims of disability discrimination in violation of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 *et seq.* The two actions were consolidated and the district court[1] granted summary judgment in favor of UPS. Faidley appealed. A divided panel of this court reversed in part and remanded. Faidley v. United Parcel Serv. of Am., Inc., 853 F.3d 447 (8th Cir. 2017). We granted rehearing en banc and vacated the panel opinion. The Equal Employment Opportunity Commission (EEOC) has submitted an amicus brief in support of plaintiff Faidley. Reviewing the grant of summary judgment *de novo*, we affirm the district court.

## I. Background

**A. The First Action.** Faidley began working as a UPS package car driver in 1987, making residential and business deliveries and picking up commercial packages. He suffered a work-related back injury in February 2010 and was assigned to temporary alternate work (TAW) until April 2010. In February 2011, he suffered another work-related injury and was off work receiving worker's compensation benefits until June 2011. In October 2011, he had hip replacement surgery to treat a degenerative hip condition, which he described as "a different medical issue than the back pain" in 2010. He began physical therapy in November 2011. His

---

[1]The Honorable John A. Jarvey, Chief Judge of the United States District Court for the Southern District of Iowa.

orthopaedic surgeon, Dr. Devon Goetz, released Faidley to return to work with no restrictions on April 26, 2012.

Faidley testified that when he returned to work as a package car driver, he requested an eight-hour day the first day he drove, and UPS gave him a lighter-than-normal day that he completed in 8.27 hours. His second day of driving was exceptionally heavy, taking 9.65 hours to complete and leaving him "sore and [with] some pain in my back." He worked 6.12 hours the third day. When Faidley saw that his fourth "plan day" was scheduled to be almost 12 hours, he told his supervisor, "The way I'm feeling there's no way I can get that done." After consulting the union steward and an occupational nurse, UPS made an appointment for Faidley to see Dr. Goetz on May 15 and told him, "You are done until you get in to the doctor." However, UPS contacted Faidley when it was short drivers the following week and offered to "take it easy on you" if he returned to work. Faidley said he was feeling better and returned to his package car position, working between 6.84 and 9.53 hours from May 7 to 14, 2012.

On May 15, Faidley visited Dr. Goetz with a nurse hired by UPS. The three discussed the trouble Faidley was having and concluded that Dr. Goetz should issue a "Patient Status Report" stating that Faidley could return to work but with a permanent restriction limiting him to working no more than eight hours a day. Faidley testified that he handed Dr. Goetz's Status Report to his station manager, Scott Schmitz, at work the following morning. Schmitz said, "Congratulations, your career at UPS is now over. . . . UPS won't allow anybody to work with a permanent restriction." Schmitz told Faidley he could not work with that restriction. They consulted the union steward, who said to Faidley, "Go home."

On May 17, Faidley faxed UPS that he "would still like to continue working at UPS even if it means a job with-in or out-side my current classification. I am hopeful that . . . there is something available for me." Properly treating this as an

employee request for an ADA accommodation, UPS immediately sent Faidley a Request for Medical Information form to be completed by his physician. On June 18, Faidley returned the form to UPS.[2] On July 24, Faidley attended an "accommodation checklist meeting" with UPS Occupational Health Supervisors Jurgen Rosner and Terra Vellema, and District Human Resources Manager Vince Blood. The purpose of the meeting, as stated in UPS's ADA Procedural Compliance Manual, was:

> to engage in a good faith, interactive meeting with the employee in order to determine whether the employee can be accommodated in his current job and, if not, to determine whether there are any other positions that are currently available, or that will become available within a reasonable period of time for which he is qualified, and for which he can perform the essential job functions with or without accommodation.

Faidley submitted an Accommodation Checklist stating that he requested an accommodation because of "my hip replacement surgery and my lumbar degenerative disk disease and right hip osteoarthritis," that he had hip and back pain "after 8 hours of repetitive lifting, walking, climbing, standing," and that he "could currently do my bid route if it was dispatched between 8 and 8.50 hours of work a day." With regard to other UPS positions, Faidley stated:

> with an 8.0 hr accommodation, I believe I could do any job at UPS that I'm aware of such as car washer, porter jobs, preload airdriver - air ramp or hub positions. Without an accommodation, I'm not aware of any jobs that I would be able to do. Preload-air driver is best position I could think of.

The day after the meeting, Faidley sent an email to the three UPS attendees urging UPS to grant his request for an eight-hour accommodation as a package car driver:

---

[2]We cannot find a copy of this document in either party's Appendix.

I really believe that UPS should put [m]e back to working the delivery driver position i have held for 25 years. During the time that i held that position i rarely had to work overtime. In fact, i regularly earned the production bonus because i completed my stops in eight hours or less. There are around 100 drivers at the Des Moines center and i am sure that any additional work could be managed by other drivers who want to work overtime. I would appreciate it if the company would reconsider its position that all drivers have to work overtime.

After the meeting, the UPS regional review committee determined that Faidley could not be accommodated in his current package car driver position, because its essential functions included being able to work nine and one-half hours a day, and sometimes more. The committee discussed reassigning Faidley to other positions as a possible accommodation. The positions identified by Faidley -- car washer, porter, and preload air-driver inside or hub jobs -- were identified as full-time eight-hour jobs for which Faidley was qualified, and he was encouraged to bid on those jobs when available. In addition, Blood raised the possibility of Faidley becoming a "feeder driver" who drives semi-tractor trailers between UPS locations, a job that requires working more than eight hours a day and for which Faidley would need training, but one that does not require as much walking, lifting, and climbing in and out of the truck as the package car driver job. Blood testified that he was asked whether feeder jobs were "currently available" and was told not to list that job when he answered "No." In opposing summary judgment, Faidley submitted an affidavit averring he "was unaware that UPS considered the position of a Feeder Driver as a potential accommodation" and opining, "I could have performed that position" for the required 9.5 hours per day "because it did not require me to get in and out of the truck frequently [nor] require me to do any significant lifting."

Faidley was unable to obtain reassignment to any of the alternative full-time jobs he had suggested. Some had no vacancies, and he lacked the seniority to successfully bid on others. As a result, UPS instead offered him a part-time inside job

on August 9, 2012. He declined that offer because it would reduce his seniority and bidding rights. Faidley remained a UPS employee on medical leave. He filed the first action in January 2013. As amended after removal, Faidley claims that UPS failed to accommodate his disability in violation of the ADA and the ICRA.

**B. The Second Action.** Faidley testified that he filed a grievance with the local union objecting to not being able to work. At a state-level proceeding, UPS and union representatives stated that his eight-hour work restriction was "the biggest drawback" to successfully bidding on other full-time UPS positions. Faidley returned to Dr. Goetz in January 2013. They reviewed other non-driver positions, including "car washer, porter, loader, unloader, preloader." On January 24, Dr. Goetz issued revised restrictions stating that Faidley could perform any job other than package car driver with no hourly restriction.[3] Faidley then bid on a number of positions and won a full-time combined loader/preloader position on February 4, 2013.

The loader position required stacking packages in semi-trailer trucks, while the preloader position required loading packages into delivery trucks. When the combined position caused Faidley too much pain, he returned to Dr. Goetz, who issued a Patient Status Report recommending that Faidley "work 4 hrs/day at pre-loader job (not as repetitive and strenuous as Loader Job)" until his next visit on March 28. In response to an email from Faidley's worker's compensation lawyer, UPS's worker's compensation lawyer advised that Faidley's combination job "is not an accommodated position that he received through the ADA process" because Dr. Goetz had stated that Faidley could do any job other than package car driver without an eight-hour restriction, and that UPS "is unable to accommodate the current 4-hour restriction" because Faidley had used all of his TAW time.[4] In response, Faidley's

---

[3]We cannot find a copy of this document in either party's Appendix.

[4]Temporary alternate work time is defined and limited under UPS's collective bargaining agreement with the International Brotherhood of Teamsters.

ADA attorney wrote UPS's ADA attorney asserting (i) UPS "stubbornly refuses to recognize" Faidley's ability to perform the essential functions of the package car driver position with an eight-hour accommodation; (ii) UPS has refused to engage in the accommodation process required by the ADA and instead "has left Mr. Faidley to blindly apply for positions"; and (iii) Dr. Goetz's authorization of a return to work for four hours per day for five weeks "is an accommodation request for part-time work as a work-hardening program."

Faidley returned to Dr. Goetz on March 3, 2013. Dr. Goetz issued a "Physician Note" stating that he and Faidley had agreed on the following permanent restrictions: no hourly restriction; minimal lifting above shoulder height (no more than twice per hour); and no lifting greater than seventy pounds. UPS then began a second ADA accommodation process and met with Faidley in May 2013. His Accommodation Checklist listed his current job as "Article 22-3, midnight loader-preload." He identified as possible other positions Car Washer, Porter, Clerk, Spa, Air Driver, and his former delivery route minus a commercial customer that involved picking up heavy packages. After an exchange of emails, Blood's successor advised Faidley on July 10 that UPS was looking for available full-time Car Washer, Porter, Clerk, and Spa positions but determined he could not perform the essential functions of the other positions because of his medical lifting restrictions. In September 2013, having found no full-time position on which Faidley could successfully bid, UPS offered him another part-time position. He declined, electing instead to retire in November 2013.

In February 2014, Faidley filed the second action, alleging ICRA disability discrimination. He also alleged unlawful retaliation because he had pursued an accommodation and filed his first complaint.[5] The district court granted summary

---

[5]On appeal, the panel in Part II.C. of its opinion unanimously concluded that Faidley did not address the ICRA retaliation claim in his opening brief and therefore waived it. We reinstate Part II.C. of the panel's opinion.

judgment in favor of UPS, concluding (i) Faidley was not constructively discharged and therefore suffered no adverse employment action; (ii) working more than eight hours a day was an essential job function of the package car driver position that could not be accommodated; (iii) Faidley was not qualified for reassignment to a feeder driver position because working nine to ten-hour days was an essential job function and Dr. Goetz had unambiguously limited Faidley to working no more than eight hours per day; (iv) UPS's TAW program exceeds ADA requirements and its parameters are therefore irrelevant; (v) because the part-time positions UPS offered Faidley were reasonable accommodations, Faidley "was not qualified to remain at UPS" after he rejected them; and (vi) a reasonable jury could not find that UPS acted in bad faith in conducting an interactive accommodation process.

On appeal, a divided panel reversed in part and remanded. As to the 2012 disability discrimination claim, the panel agreed that Faidley was not qualified to be a package car driver because he could not perform the essential job function of working more than eight hours per day. However, the majority concluded, the district court erred in granting summary judgment because there was evidence that Faidley appeared capable of performing the essential job functions of the feeder driver position, and that feeder driver positions would become open in the near future. The panel affirmed the dismissal of the 2013 disability discrimination claim because Faidley failed to offer sufficient evidence that he was able to perform the essential job functions of any available position, or that UPS failed to make a good faith effort to help him in seeking an accommodation. This rehearing en banc followed.

## II. Discussion

The ADA bars private employers from discriminating against a "qualified individual on the basis of disability." 42 U.S.C. § 12112(a). Discrimination is defined to include "not making reasonable accommodations to the known physical

or mental limitations of an otherwise qualified [employee] with a disability." 42 U.S.C. § 12112(b)(5)(A). To establish a *prima facie* case of discrimination under the ADA, Faidley must show that he "(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment decision because of the disability." Kallail v. Alliant Energy Corp. Servs., Inc., 691 F.3d 925, 930 (8th Cir. 2012). A "qualified individual" is a person "who, with or without reasonable accommodation, can perform the essential functions of the employment position that [he] holds or desires." 42 U.S.C. § 12111(8). ADA and ICRA disability discrimination claims are analyzed in the same fashion. Kallail, 691 F.3d at 930.

**A.** UPS does not dispute that Faidley's physical impairments were disabling. To be a qualified individual under the ADA, Faidley must "possess the requisite skill, education, experience, and training for [his] position." Id. (quotation omitted). UPS also does not dispute that Faidley possessed the requisite skill, education, experience and training to continue performing his package car driver position. Thus, the first issue on appeal -- and Faidley's primary focus throughout this litigation -- is whether UPS discriminated against Faidley on account of his disability when it refused to accommodate his request that he be permitted to work as a package car driver subject to Dr. Goetz's May 15, 2012 restriction limiting Faidley to an eight-hour work day.

UPS declined Faidley's requested accommodation based on its determination that being able to work more than eight hours a day was an "essential function" of the package car driver job. In moving for summary judgment on this issue, UPS explained that overtime is an essential function of the package car driver position because daily package car workloads can increase unpredictably, particularly during the year-end holiday busy season, and drivers encounter unpredictable weather conditions while completing their routes. If a driver is unable to deliver all the packages in his vehicle within eight hours, and is restricted from working overtime,

other drivers must be sent to finish the deliveries, or packages will not be timely delivered; either alternative adversely affects UPS's business. The requirement to work overtime was listed in UPS's package car driver job description, and the issue was collectively bargained with the Teamsters Union, with UPS agreeing to assign package car drivers less than 9.5 hour work days and permitting drivers to request two workdays without overtime per month. Faidley argued that working overtime was not an essential job function because he usually completed his route in less than eight hours. But he admitted that he did work overtime, as the above-summarized work days in April and May 2012 make clear, and that additional work would have to be reassigned to other drivers in the field if he was prohibited from working overtime and could not complete his deliveries in eight hours.

The district court concluded that a reasonable jury could only find that the ability to work overtime was an essential function of Faidley's package car driver job. The panel agreed, see Faidley, 853 F.3d at 450, and we confirm that ruling. We agree with the district court that UPS satisfied its burden of proof on this fact-intensive issue, which turns on factors such as the employer's judgment, its written job description, the terms of any applicable collective bargaining agreement, and the consequences of not requiring the incumbent to perform the function. See Scruggs v. Pulaski Cty., 817 F.3d 1087, 1092-93 (8th Cir. 2016); Rehrs v. Iams Co., 486 F.3d 353, 356 (8th Cir. 2007). "[A] task may be an essential function even if the employee performs it for only a few minutes each week." Minnihan v. Mediacom Commc'ns Corp., 779 F.3d 803, 812 (8th Cir. 2015). Therefore, UPS did not violate the ADA or ICRA by refusing Faidley's request for an eight-hour work day because that accommodation would have made him unqualified to perform the essential job functions of a package car driver.[6]

---

[6]The EEOC as amicus did not address this issue.

**B.** Faidley further argues that UPS failed to reasonably accommodate him when it did not offer the feeder driver position identified by Human Resources Director Blood in preparing for the July 2012 accommodation checklist meeting with Faidley. When an accommodation is not possible in an employee's current position, "reassignment to a vacant position" may be a reasonable accommodation. 42 U.S.C. § 12111(9)(B); see Kallail, 691 F.3d at 933. "[T]he definition of 'qualified individual with a disability' includes a disabled employee who cannot do his or her current job, but who desires and can perform, with or without reasonable accommodation, the essential functions of a vacant job within the company to which he or she could be reassigned." Cravens v. Blue Cross & Blue Shield of Kan. City, 214 F.3d 1011, 1018 (8th Cir. 2000).

The ADA did not require UPS to offer Faidley a position for which he was unqualified. See Minnihan, 779 F.3d at 814; Cravens, 214 F.3d at 1019 ("employee must be otherwise 'qualified' for the reassignment position"). When UPS made its first accommodation decision in July 2012, there appeared to be three reasons Faidley was not qualified for reassignment to a feeder driver position -- he could not meet the essential job function of working up to 9.5 hours per day with the eight-hour accommodation he requested based on Dr. Goetz's permanent medical restriction; he would need additional training to possess the requisite skill, education, and training for this position; and there were no available feeder driver vacancies. The panel concluded there was a genuine issue of material fact requiring remand on this issue because Blood wrote on his accommodation worksheet that Faidley "preliminarily appear[ed] capable of performing the essential job functions" of a feeder driver, and there was evidence that feeder driver positions would become open in the near future. The EEOC supports this decision. However, we conclude that it is not supported by the summary judgment record and therefore Faidley was not qualified for the feeder driver job as a matter of law.

It is undisputed that the ability to work 9.5 hours a day was an essential function of the feeder driver job. Dr. Goetz's May 15, 2012 Status Report permanently restricted Faidley from working more than eight hours a day. The document gave no indication it was limited to Faidley's current package car driver position. Faidley and the EEOC argue it was ambiguous whether Dr. Goetz intended the medical restriction to apply to any job other than package car driver. But this contention flies in the face of Dr. Goetz's deposition testimony that he intended the eight-hour restriction to apply to other jobs:

> Q: [A]s long as this [restriction] was in place, you understood that [Faidley] wasn't going to be able to work in a job more than eight hours; right?
>
> A: Right.
>
> Q: And that's what you intended to convey with that; correct?
>
> A: Correct.[7]

Moreover, before UPS offered Faidley reassignment to other full-time positions which did not require overtime, Faidley submitted to the UPS accommodation review committee an Accommodation Checklist stating, "with an 8.0 hr accommodation, I believe I could do any job at UPS that I'm aware of . . . . *Without an accommodation, I'm not aware of any jobs that I would be able to do.*" (emphasis added). Thus,

---

[7]Faidley cites another portion of Dr. Goetz's deposition in which he states he crafted the restriction with the package car driver position in mind and had no reason to believe Faidley could not perform the less strenuous feeder driver job. But he failed to present this evidence to the district court, so it is not part of the summary judgment record on appeal. Bath Junkie Branson, L.L.C. v. Bath Junkie, Inc., 528 F.3d 556, 559-60 (8th Cir. 2008).

Faidley's own accommodation request adopted and confirmed that Dr. Goetz had unambiguously limited him to working eight hours a day at any position.

We have stated in prior cases that "[t]he ADA does not require an employer to permit an employee to perform a job function that the employee's physician has forbidden." Scruggs, 817 F.3d at 1094, quoting Alexander v. Northland Inn, 321 F.3d 723, 727 (8th Cir. 2003). We acknowledge that substantial objective evidence that conflicts with a physician's statement may create a genuine issue of material fact whether the employee is qualified to perform a particular job. Cf. Holiday v. City of Chattanooga, 206 F.3d 637, 644-45 (6th Cir. 2000) (substantial evidence plaintiff was qualified to serve as a police officer created genuine dispute, notwithstanding contrary assessment by employer's contract physician). But Vince Blood's note stating that Faidley "preliminarily appear[ed] capable of performing the essential job functions" of feeder driver is insufficient to create a material fact dispute about Faidley's qualifications. It was a preliminary subjective opinion, unsupported by objective evidence, not materially different than the employee's subjective assessment that was insufficient to create a material dispute with his physician's restrictions in Otto v. City of Victoria, 685 F.3d 755, 758 (8th Cir. 2012). Moreover, reading Blood's ambiguous note for summary judgment purposes as opining that Faidley could work 9.5 hours a day as a feeder driver, it does not create a *material* fact dispute when Faidley, the employee requesting accommodation, *and* his physician declared that Faidley could not perform this essential function of the feeder driver position. On this record, Dr. Goetz's facially unambiguous restriction established that Faidley was not qualified to be reassigned to a feeder driver position.

Of course, nothing precluded UPS from pursuing Blood's notation that the less strenuous duties of a feeder driver might permit reassignment to that position, for example, if Dr. Goetz were to modify his eight-hour permanent restriction, as happened several months later. But UPS was under no ADA duty to pursue that

unlikely accommodation -- which would require training Faidley and waiting for a position to open up -- rather than pursue the inside full-time positions that Faidley listed in his accommodation checklist and for which he was immediately qualified. "[A]n employer only has to provide an accommodation that is reasonable," not an accommodation the employee prefers. Scruggs, 817 F.3d at 1093; see Minnihan, 779 F.3d at 814. The ADA prohibits disability *discrimination*. If an employer "bends over backwards to accommodate a disabled worker . . . it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation." Vande Zande v. Wis. Dep't of Admin., 44 F.3d 538, 545 (7th Cir. 1995).

Faidley and the EEOC argue the testimony that the UPS review committee did not list the feeder driver job because it was unavailable was contrary to the principle that "reassignment to a vacant position," 42 U.S.C. § 12111(9)(B), includes a position "the employer reasonably anticipates will become vacant in a short period of time." Cravens, 214 F.3d at 1019 n.5 (quotation omitted). The principle is sound but does not affect this case. Faidley was not qualified for the feeder driver position because of his permanent eight-hour restriction, so UPS had no ADA duty to propose that accommodation. Moreover, from a practical standpoint, Faidley wanted to return to work immediately, he proposed only full-time inside jobs as alternative accommodations if he could not return to work as a package car driver with an eight-hour restriction, and it was doubtful he would be found qualified for a feeder driver position even if one came open (as next happened in September 2012). No reasonable jury could find that UPS's decision to instead pursue reassignment to full-time jobs which Faidley had suggested, and for which he was immediately qualified, was disability discrimination.

**C.** Turning to the 2013 claim of disability discrimination, Faidley argues that UPS violated the ADA when it refused to accommodate Dr. Goetz's temporary

restrictions of working four hours per day for five weeks at the combined loader-preloader job Faidley won after Dr. Goetz eliminated the permanent eight-hour per day restriction in January 2013. Faidley argues that UPS's excuse -- that TAW policies under the collective bargaining agreement precluded this accommodation -- was both factually and legally insufficient. The panel majority upheld the district court's grant of summary judgment on this issue, concluding (i) that UPS was not required to reallocate the essential functions of the combined position, and (ii) that Faidley did not present evidence that he could perform the essential functions of any available jobs with the permanent lifting restrictions Dr. Goetz imposed in 2013, including the package car driver and feeder driver positions at issue in resolving the 2012 claim. Faidley, 853 F.3d at 452, citing Minnihan, 779 F.3d at 813. We agree.

**D.** Finally, Faidley argues the district court erred in granting summary judgment on his claim that UPS committed disability discrimination by failing to engage in good faith in the required interactive accommodation process. See Peyton v. Fred's Stores of Ark., Inc., 561 F.3d 900, 902 (8th Cir.), cert. denied, 558 U.S. 876 (2009); Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 951-52 (8th Cir. 1999). We disagree.

"There is no per se liability under the ADA if an employer fails to engage in the interactive process," but at the summary judgment stage such a failure is "prima facie evidence that the employer may be acting in bad faith." Minnihan, 779 F.3d at 813 (quotation omitted). To establish that an employer failed to participate in an interactive process, a disabled employee who requested an accommodation, such as Faidley, must show that "the employer did not make a good faith effort to assist the employee in seeking accommodation; and . . . the employee could have been reasonably accommodated but for the employer's lack of good faith." Cravens, 214 F.3d at 1021.

-15-

Here, UPS participated in the interactive process prescribed in its ADA Procedural Compliance Manual when Faidley requested an accommodation in May 2012 and again in March 2013. The UPS accommodation committee met with Faidley in July 2012 and May 2013 to assess whether accommodations consistent with Dr. Goetz's restrictions were available, including reassignment to other jobs suggested by Faidley or identified by the committee. Full-time jobs for which Faidley was qualified were identified; he bid on several positions but lacked the seniority to obtain them. After the May 2013 meeting, when full-time positions Faidley could have performed with his lifting restrictions were not available, UPS told him it would notify him if any position became available and again offered him a part-time job that he rejected. Given these extensive efforts, we agree with the district court that a reasonable jury could not find that UPS acted in bad faith.

## III. Conclusion

For the foregoing reasons, the judgment of the district court is affirmed.

MURPHY, Circuit Judge, with whom SMITH, Chief Judge, and KELLY, Circuit Judge, join, concurring in part and dissenting in part.

I agree that the district court correctly concluded that Faidley was unqualified for the package car driver and the combination loader and pre loader positions. I also agree that Faidley did not present evidence showing that UPS failed to make a good faith effort to help him in seeking an accommodation. I believe, however, that the district court erred by determining as a matter of law that Faidley was unable to perform the essential job functions of the feeder driver position. I therefore dissent from the majority opinion part II.B.

-16-

To prove disability discrimination, an employee must establish "that he (1) has a 'disability' within the meaning of the ADA, (2) is a 'qualified individual' under the ADA, and (3) 'suffered an adverse employment action as a result of the disability.'" Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 711 (8th Cir. 2003) (quoting Duty v. Norton-Alcoa Proppants, 293 F.3d 481, 490 (8th Cir. 2002)).  An employee is a qualified individual under the ADA if he "(1) possess[es] the requisite skill, education, experience, and training for [his] position; and (2) [is] able to perform the essential job functions, with or without reasonable accommodation." Kallail v. Alliant Energy Corp. Servs., Inc., 691 F.3d 925, 930 (8th Cir. 2012) (quoting Fenney, 327 F.3d at 712).  Essential job functions "are the fundamental duties of the job, but not its marginal functions." Id.  Reasonable accommodation may require "reassignment to a vacant position," 42 U.S.C. § 12111(9)(B); vacant positions include positions "that the employer reasonably anticipates 'will become vacant in a short period of time.'" Cravens v. Blue Cross & Blue Shield of Kansas City, 214 F.3d 1011, 1019 n.5 (8th Cir. 2000) (quoting Monette v. Elec. Data Sys. Corp., 90 F.3d 1173, 1187 (6th Cir. 1996)).

The majority concluded that Faidley was unqualified for the feeder driver position because the position sometimes required working more than eight hours per day.  As the majority notes, a good deal of evidence supports this claim.  Faidley referred in his affidavit to "the required 9.5 hours per day for that position."  Human resources manage Vince Blood wrote on a 2012 accommodation worksheet, however, that Faidley "preliminarily appear[ed] capable of performing the essential job functions" of the feeder role.  On the same form, he wrote that Faidley could work no more than eight hours per day.  I believe that this is sufficient to create a genuine issue of material fact on Faidley's claim that he was qualified to perform the essential functions of the feeder driver position.  For this reason, I would reverse and remand Faidley's discrimination claim to the district court.

---

-17-