# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1411
_____

Angela Kendall

*Plaintiff - Appellant*

v.

Zoltek Corporation

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 13, 2026
Filed: May 18, 2026
_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.
_____

SHEPHERD, Circuit Judge.

Angela Kendall sued her former employer—Zoltek Corporation
(Zoltek)—alleging failure to accommodate and retaliation in violation of the
Americans with Disabilities Act (ADA) and sex discrimination in violation of Title
VII. The district court[1] granted summary judgment to Zoltek on all of Kendall's

_____

[1]The Honorable John A. Ross, United States District Judge for the Eastern
District of Missouri.

claims. Kendall appeals the grant of summary judgment to Zoltek. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

Zoltek "produces essential products" as defined by a division of the U.S. Department of Homeland Security, and its "St. Peters facility supplies global products to wind turbine generators for renewable energy." In 2018, Zoltek hired Angela Kendall to work as a production operator in its St. Peters facility. As a production operator, Kendall was expected to set up and operate equipment to process carbon fiber, restock materials, and pack, label, and document products, among other tasks. Kendall reported that operating the equipment to process carbon fiber required her to stand, bend over, squat, walk, and reach. Additionally, Zoltek's advertised job description for a production operator indicated that interested persons had to meet certain physical requirements, including the ability to lift at least 25 pounds overhead, turn, bend, reach, pull, walk, and stand for up to 12 hours.[2]

In late April 2021, Kendall slipped while at work and went to the emergency room a few days later for continuing back pain. She was diagnosed with muscle spasms and potential sciatica. At a follow-up visit the next week, her doctor released her to return to work with no restrictions. In June 2021, however, Kendall provided Zoltek with a doctor's note that stated: "Please allow Angela sitting time secondarily, during her work shifts due to her sciatica flare ups."[3] Zoltek permitted this accommodation for several months. Despite this temporary accommodation, Zoltek viewed its standing requirement as particularly important for production

---

[2]Although Zoltek hired Kendall as a production operator in 2018, the parties rely on Zoltek's 2022 job description for the position. Because neither party argues otherwise, we assume that Zoltek's 2018 job description did not materially differ from the 2022 version.

[3]Although the parties do not explain what "sitting time secondarily" means, we presume it to mean sitting occasionally.

operators. Indeed, earlier in the year, Zoltek's plant manager Dawn Pagano issued a "no sitting" reminder. Additionally, after providing Kendall an accommodation, Zoltek management informed the other production operators that "[n]obody's supposed to be sitting down but Angela." Although Kendall contends that fellow production operator Tyrone Brooks was allowed to sit during his shift, Zoltek disputes this.

After accommodating Kendall for a few months, Zoltek requested an updated doctor's note and held a meeting with her. In mid-September 2021, Kendall provided a doctor's note that stated she could work while seated but could not crawl under equipment; it did not indicate that she could work while standing. Then, in early October 2021, Kendall met with Zoltek's human resources staff to discuss the status of her medical restrictions and accommodations. Zoltek's meeting notes indicated that although Kendall's restrictions did not inhibit her performance, the issue was the policy—that production operators must stand for at least 12 hours—which Zoltek maintained must be enforced. Because of Kendall's inability to stand for an extended period, Zoltek placed her on medical leave following the meeting. Later in October 2021, while on leave, Kendall submitted an updated doctor's note that stated: "Angela needs to be able to sit down immediately after standing to change paper. She cannot crawl around on the floor." This note indicated that these restrictions were a permanent condition.

In November 2021, Kendall applied for and received short-term disability benefits. In her disability application, Kendall's nurse practitioner wrote that she could not bend, stoop, kneel, crawl under machines, reach underneath tables, stand for more than 10 minutes at a time, or lift more than 10 pounds overhead. This provider further indicated that Kendall would be unable to work until mid-April, at which point reassessment of her condition would be necessary.

In January 2022, Zoltek terminated Kendall's employment. It explained that Kendall had no foreseeable return-to-work date and had represented that she could not return to work without medical restrictions or with ones that could be reasonably

accommodated. Zoltek also noted that Kendall had exhausted her FMLA leave along with all other leave entitlements, leaving it with "no alternative but to terminate [her] employment."

By that point, Kendall had already filed discrimination charges with both the Missouri Commission on Human Rights and the Equal Employment Opportunity Commission (EEOC) alleging that Zoltek discriminated against her based upon her disability and sex. After receiving a right to sue letter from the EEOC, she filed a complaint in the U.S. District Court for the Eastern District of Missouri alleging failure to accommodate and retaliation in violation of the Americans with Disabilities Act (ADA) and sex discrimination in violation of Title VII.

Zoltek filed a motion for summary judgment regarding all Kendall's claims. The district court granted this motion. The district court held that Zoltek was entitled to summary judgment regarding both Kendall's ADA failure to accommodate claim and her Title VII sex discrimination claim because Kendall could not perform the essential functions of her job as a production operator and therefore was not qualified. The district court also granted summary judgment to Zoltek as to Kendall's ADA retaliation claim because it found that the "record contains no evidence of discrimination or an adverse action in Kendall's employment conditions." Kendall appeals the district court's grant of summary judgment to Zoltek regarding her ADA failure to accommodate claim and her Title VII sex discrimination claim.[4]

II.

Kendall contends that the district court erred in granting Zoltek's motion for summary judgment. This Court reviews a grant of summary judgment de novo, "construing the record in the light most favorable to the nonmoving party."

---

[4]Kendall does not appeal the district court's grant of summary judgment to Zoltek regarding her ADA retaliation claim.

Corkrean v. Drake Univ., 55 F.4th 623, 630 (8th Cir. 2022). "We will affirm the grant of summary judgment 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Shirrell v. St. Francis Med. Ctr., 793 F.3d 881, 885 (8th Cir. 2015) (quoting Fed. R. Civ. P. 56(a)). "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citation omitted).

A.

First, Kendall argues that the district court erred in granting summary judgment to Zoltek on her ADA failure to accommodate claim. She first argues that the district court improperly concluded that she did not establish a prima facie case, as she contends that standing is not an essential job function. Second, she argues that she could perform the essential job functions of a production operator with reasonable accommodation. Third, she argues that she presented direct evidence of discrimination.

1.

The ADA prohibits employers from discriminating against a qualified individual with a disability because of his/her disability. See 42 U.S.C. § 12112(a). Discrimination includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified [employee] with a disability." Id. § 12112(b)(5)(A). To make a prima facie case for an ADA failure to accommodate claim, a plaintiff must show that she: "(1) is disabled within the meaning of the ADA, (2) is a qualified individual under the ADA, and (3) suffered an adverse employment decision because of the disability." Faidley v. United Parcel Serv. of Am., Inc., 889 F.3d 933, 940 (8th Cir. 2018) (en banc) (citation omitted). To be qualified, the plaintiff must: "(1) possess the requisite skill, education, experience, and training for [the] position, and (2) be able to perform the essential

-5-

job functions, with or without reasonable accommodation." Minnihan v. Mediacom Commc'ns Corp., 779 F.3d 803, 810 (8th Cir. 2015) (alteration in original) (citation omitted). The parties agree that Kendall meets the first prong of the qualified employee test. However, they dispute: (1) the essential job functions of a production operator and (2) whether Kendall could perform these functions with or without reasonable accommodation. Each dispute is addressed in turn.

The district court determined (and Zoltek maintains) that the physical requirements identified in the job description for a production operator—including standing throughout a 12-hour shift, lifting, bending, turning, and reaching—are essential job functions. Kendall disputes this, as she maintains that her job performance did not suffer when Zoltek permitted her "to sit as needed for several months."

Although the employee has the "ultimate burden of proving that [s]he is a qualified individual, an employer who disputes [her] claim that [s]he can perform the essential functions of the job must put forth evidence establishing those functions." Dropinski v. Douglas Cnty., 298 F.3d 704, 707 (8th Cir. 2002). Determining the essential functions of a job is a "fact-intensive issue." Faidley, 889 F.3d at 941. We consider factors such as the employer's judgment, the written job description prepared before interviewing applicants, the consequence of not requiring the plaintiff to perform the functions, and the current work experience of incumbents in similar jobs. See id.; see also Scruggs v. Pulaski Cnty., 817 F.3d 1087, 1092 (8th Cir. 2016).

Zoltek's written job description for a production operator demonstrates that the position is physically demanding and requires standing during the entirety of a 12-hour shift. It specifies that the person must: (1) set up and operate equipment to process carbon fiber for composite products and (2) continuously feed carbon fiber into the machines, inspecting both the product during production and the finished goods before shipment. Kendall testified that operating this equipment required her to stand, bend over, squat, walk, and reach.

Furthermore, Zoltek required that all production operators be able to lift 25 pounds overhead, turn, bend, reach, pull, and walk, and stand for extended periods of time (up to 12 hours), which is particularly probative. See Kammueller v. Loomis, Fargo & Co., 383 F.3d 779, 786 (8th Cir. 2004) (noting that "Eighth Circuit cases generally give deference to the employer's judgment of essential job functions" as it is "highly probative"). When Zoltek terminated Kendall's employment in January 2022, she could not stand for more than 20-30 minutes, bend, stoop, kneel, crawl under machines, or lift more than 10 pounds. Accordingly, "[m]any of the functions included in the written job description inherently include the possibility of physical exertion that exceed[ed] [Kendall's] limitations." Dropinski, 298 F.3d at 708.

We conclude that the essential functions of a production operator include the general functions contained within the job description. See Denson v. Steak 'n Shake, Inc., 910 F.3d 368, 371 (8th Cir. 2018) (concluding that the essential functions of a job were the "duties laid out in the job description"). Zoltek's expectation that production operators perform these functions is reasonable. See Dropinski, 298 F.3d at 709 (finding that the "essential functions" of a job "include those general labor functions described in the job description and those articulated by [the employer] and that it is reasonable to expect . . . employee[s] to perform those general functions").

While Kendall argues that standing is not an essential function of her job because Zoltek allowed her to sit for a few months and accommodated Tyrone Brooks's standing restrictions, neither of these contentions advance her claim. First, although Zoltek permitted Kendall to sit occasionally from June to October 2021, we have held that "[a]n employer does not concede that a job function is 'non-essential' simply by voluntarily assuming the limited burden associated with a temporary accommodation." Rehrs v. Iams Co., 486 F.3d 353, 358 (8th Cir. 2007) (alteration in original) (citation omitted). In fact, Kendall's individual experience is irrelevant to the essential functions analysis—"[i]nstead, it is the written job description, the employer's judgment, and the experience and expectations of all [production operators] generally which establish the essential functions of the job."

Dropinski, 298 F.3d at 709. Therefore, the fact that Zoltek temporarily permitted Kendall to sit occasionally for a few months does not advance her argument that standing is a non-essential function for a production operator.

Second, the parties dispute whether and to what extent fellow production operator Tyrone Brooks was allowed to sit during his shifts. Even assuming Zoltek permitted Brooks to sit, this does not undermine Zoltek's position that standing is an essential function of production operators. See McNeil v. Union Pac. R.R. Co., 936 F.3d 786, 790-91 (8th Cir. 2019) (holding that an employer's "accommodation of the other employees . . . does not undermine its position that [the] ability to work mandatory overtime is an essential function"). It is undisputed that Zoltek's plant manager Dawn Pagano issued a "no sitting" reminder to the production operators in early 2021, and Zoltek informed production operators that "[n]obody's supposed to be sitting down but Angela." Thus, even if Zoltek permitted Brooks to sit, this appears to be an anomaly under our review of the record, as the work experience of other production operators demonstrates that they were required to stand during the entirety of their shifts. Finally, Kendall did not identify any cases holding that accommodating a single employee renders a job function non-essential.

Accordingly, we agree with the district court that there is no genuine dispute of material fact that the physical requirements identified in Zoltek's job description are essential functions of Kendall's job.

2.

Next, we address whether Kendall could perform these essential functions with or without reasonable accommodation. It is undisputed that when Zoltek terminated Kendall, she could not stand for the duration of a 12-hour shift—she could only stand for 20 to 30 minutes at a time. Additionally, she could not bend, stoop, kneel, crawl under machines, reach underneath tables, or lift more than 10 pounds overhead. Therefore, we must consider whether Kendall could have fulfilled the essential functions of her job with reasonable accommodation.

The ADA mandates that employers provide "reasonable accommodations to the known physical . . . limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [it] can demonstrate that the accommodation would impose an undue hardship." 42 U.S.C. § 12112(b)(5)(A). We apply a modified burden-shifting analysis to reasonable accommodation claims. See Fenney v. Dakota, Minn. & E. R.R. Co., 327 F.3d 707, 712 (8th Cir. 2003) (collecting cases). A plaintiff must "make a facial showing that reasonable accommodation is possible and that the accommodation will allow her to perform the essential functions of the job." Burchett v. Target Corp., 340 F.3d 510, 517 (8th Cir. 2003). If the employee makes such a showing, the employer must "show that it had a legitimate nondiscriminatory reason not to provide the accommodation." Id.

Kendall argues that allowing her to sit at work is a reasonable accommodation that would have enabled her to perform the essential functions of her job. However, as we concluded above, standing for at least 12 hours was an essential function of Kendall's job. Kendall's inability to stand prevents her performance of that essential function. See Siebrecht v. Mercy Health Servs. - Iowa Corp., 163 F.4th 524, 532 (8th Cir. 2026) (holding that a reduced work schedule cannot be a reasonable accommodation when the ability to work specific shifts was an essential job function).

Although Zoltek allowed Kendall to sit occasionally in the summer of 2021, this does not mean that this accommodation is reasonable permanently. See Faidley, 889 F.3d at 943 ("If an employer 'bends over backwards to accommodate a disabled worker . . . it must not be punished for its generosity by being deemed to have conceded the reasonableness of so far-reaching an accommodation.'" (alteration in original) (citation omitted)). And Zoltek is not required to eliminate Kendall's job duties that require her to stand or engage in other physical activities. See Fjellestad v. Pizza Hut of Am., Inc., 188 F.3d 944, 950 (8th Cir. 1999) ("While job restructuring is a possible accommodation under the ADA, this court has held that an employer need not reallocate or eliminate the essential functions of a job to accommodate a disabled employee.").

Moreover, in November 2021, Kendall reported that she could not bend, reach, or lift more than 10 pounds overhead. As we previously determined, these three duties are also essential functions because Zoltek identified them in the written job description for production operators. As such, even if Zoltek permitted Kendall to sit during her shifts, at the time that Zoltek terminated her, she was unable to perform the other essential functions for her job. Thus, she is not qualified. See EEOC v. Wal-Mart Stores, Inc., 477 F.3d 561, 568 (8th Cir. 2007) ("The determination of whether an individual is qualified for purposes of the ADA . . . should be made as of the time of the employment decision." (citation omitted)); see also Hatchett v. Philander Smith Coll., 251 F.3d 670, 675 (8th Cir. 2001) (holding that "because the Court finds that [the plaintiff] is not able to otherwise perform the essential functions while on the job" even with her requested accommodation, "she is not qualified"). The district court did not err in finding that there was no triable fact on this issue.

3.

Kendall also argues that she presented direct evidence of Zoltek's discriminatory motive, which she contends is sufficient to preclude summary judgment. However, an employer's motive is not relevant to a reasonable accommodation claim. See Peebles v. Potter, 354 F.3d 761, 766 (8th Cir. 2004) (explaining that "[t]he failure to make reasonable accommodations in the employment of a disabled employee is a separate form of prohibited discrimination," which "does not turn on the employer's intent or actual motive"). Indeed, in a reasonable accommodation claim, "it is not the employer's discriminatory intent in taking adverse employment action against a disabled individual that matters"; rather, "[t]he known disability triggers the duty to reasonably accommodate and, if the employer fails to fulfill that duty, we do not care if he was motivated by the disability." Id. at 767. Kendall's alleged evidence of intent does nothing to advance her claim that she can perform the essential functions of her job with reasonable accommodation.

-10-

Accordingly, the district court did not err in granting summary judgment to Zoltek regarding Kendall's ADA failure to accommodate claim, as she did not demonstrate that she was a qualified employee and thus failed to establish a prima facie case. See Kellogg v. Union Pac. R.R. Co., 233 F.3d 1083, 1086 (8th Cir. 2000) ("If [the plaintiff] fails to establish any element of [her] prima facie case, summary judgment is proper.").

B.

Next, Kendall argues that the district court erred in granting summary judgment to Zoltek on her Title VII sex discrimination claim. Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). "An employee may survive an employer's motion for summary judgment on a Title VII claim 'in one of two ways'"—either "by proof of direct evidence of discrimination" or "by creating the requisite inference of unlawful discrimination through the McDonnell Douglas[5] [framework]." Martinez-Medina v. Rollins, 144 F.4th 1091, 1096 (8th Cir. 2025) (alteration in original) (citation omitted).

Kendall does not rely on direct evidence; therefore, she "'must avoid summary judgment by creating the requisite inference of unlawful discrimination through the McDonnell Douglas' framework." Id. (citation omitted). Under this framework, Kendall must first establish a prima facie case of sex discrimination by showing that: (1) she belongs to the protected class; (2) she was qualified to perform her job; (3) she suffered an adverse employment action; and (4) similarly situated employees outside the protected class were treated differently. Gibson v. Concrete Equip. Co., Inc., 960 F.3d 1057, 1062 (8th Cir. 2020).

---

[5]McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

The parties dispute whether Kendall satisfied the second element—that she was qualified to perform her job. There appears to be some tension in our Court's caselaw regarding how to evaluate whether an employee was qualified to perform her job in a sex discrimination claim. Some of our cases require a showing that an employee met his or her employer's legitimate expectations, whereas others only require an employee to have the basic skills necessary for the job and do not require satisfactory job performance. Compare McGinnis v. Union Pac. R.R., 496 F.3d 868, 874 n.2 (8th Cir. 2007) (holding that an employee "must show only that he possesses the basic skills necessary for performance of the job" (citation omitted)), with Kratzer v. Rockwell Collins, Inc., 398 F.3d 1040, 1046-47 (8th Cir. 2005) (concluding that an employee demonstrates she is qualified when she "actually performs her job at a level that [meets her] employer's legitimate expectations" (alteration in original) (citation omitted)). See also Riser v. Target Corp., 458 F.3d 817, 820 (8th Cir. 2006) (recognizing the potential tension between these two standards). Even assuming there is a difference between these two tests, we need not resolve which one applies because Kendall cannot satisfy either formulation.

As we previously concluded, Kendall was not qualified for her position as a production operator because she could not perform the essential job functions with or without reasonable accommodation. The minimum objective criteria for production operators required that an individual be able to stand for up to 12 hours, lift more than 25 pounds overhead, bend, and turn, among other physical requirements. There is no dispute that when Zoltek terminated her, Kendall could not stand for more than 20-30 minutes, lift more than 10 pounds overhead, or bend. As such, Kendall did not possess the basic skills necessary to perform her job, nor did she show that she could perform her job at a level that met Zoltek's legitimate expectations. Therefore, the district court did not err in determining that she was not objectively qualified for her role as a production operator. See Kratzer, 398 F.3d at 1047 (holding that an employee did not show she was objectively qualified as "[t]here is no dispute that [the plaintiff] could not physically accomplish the 408B test," which was part of the "minimum objective criteria" of her role).

As Kendall failed to establish that she was qualified, it is unnecessary for us to address her argument that Zoltek treated her differently than a similarly situated male employee.  See Brady v. Walmart Stores E. I, LP, 144 F.4th 1047, 1054 (8th Cir. 2025) (holding that the employer was entitled to summary judgment on the plaintiff's Title VII claim where the plaintiff failed to show that she was qualified for the position).  Thus, the district court did not err in granting summary judgment to Zoltek regarding Kendall's Title VII claim as Kendall failed to establish a prima facie case.

III.

For the foregoing reasons, we affirm the judgment of the district court.

_____